# In the United States Court of Appeals for the Third Circuit

HAROLD R. BERK,
*Plaintiff-Appellant,*

*v.*

WILSON C. CHOY, MD, ET AL.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Delaware
No. 1:22-cv-01506-RGA (Hon. Richard G. Andrews)

## PLAINTIFF-APPELLANT'S OPENING BRIEF

R. Stanton Jones
Andrew T. Tutt
Samuel I. Ferenc
Minjae Kim
Katie Weng
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
sam.ferenc@arnoldporter.com

*Counsel for Plaintiff-Appellant Harold R. Berk*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ iii

JURISDICTIONAL STATEMENT ..............................................................1

STATEMENT OF THE ISSUES ...................................................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS ...................2

INTRODUCTION ..........................................................................................3

STATEMENT OF THE CASE .......................................................................6

    A.    Legal Background .........................................................................6

        1.    The Delaware Affidavit of Merit Statute ............................6

        2.    The *Erie* Doctrine After *Shady Grove* ...................................9

        3.    Other Circuits' Implementation of *Shady Grove* ...............12

        4.    This Court's *Erie* Doctrine ..................................................16

    B.    Factual Background .......................................................................21

    C.    Procedural History .......................................................................26

SUMMARY OF ARGUMENT.....................................................................29

STANDARD OF REVIEW ..........................................................................32

ARGUMENT .................................................................................................33

I.    Delaware's Affidavit of Merit Statute Does Not Apply in Federal Court ...................................................................................................33

    A.    The Delaware Statute Attempts to Answer the Same Question as Multiple Federal Rules of Civil Procedure...............35

        1.    Delaware's Affidavit of Merit Statute Conflicts with Federal Pleading Requirements............................................35

        2.     The Delaware Statute Conflicts with Federal Rules and Principles Governing Dismissal of Complaints ................... 41

   B.    Existing Authority Addressing Pennsylvania and New Jersey Law Does Not Apply to the Delaware Statute ................ 43

        1.     The Delaware Statute Creates a Pleading Requirement .. 44

        2.     This Court's Pennsylvania and New Jersey's Precedents Do Not Control This Case .................................................... 45

II.   If the Court's Existing Precedent Applies to the Delaware Statute, Those Cases Should be Overruled ............................................ 50

CONCLUSION ................................................................................. 55

CERTIFICATE OF BAR MEMBERSHIP ...................................... 57

CERTIFICATE OF SERVICE ........................................................ 58

CERTIFICATE OF COMPLIANCE ............................................... 59

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Pol'y Grp., LLC,*
    783 F.3d 1328 (D.C. Cir. 2015)..................................................................*passim*

*Albright v. Christensen,*
    24 F.4th 1039 (6th Cir. 2022) ...........................................4, 14, 38, 54

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................................41

*Beckett v. Beebe Med. Ctr., Inc.,*
    897 A.2d 753 (Del. 2006) ...........................................8, 37, 44, 45, 49

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................16, 42

*Booker v. United States,*
    366 F. App'x 425 (3d Cir. 2010) .........................................................32

*U.S. ex rel. Bookwalter v. UPMC,*
    946 F.3d 162 (3d Cir. 2019) .................................................................42

*Burlington N. R.R. Co. v. Woods,*
    480 U.S. 1 (1987)......................................................................................41

*Cape May Greene, Inc. v. Warren,*
    698 F.2d 179 (3d Cir. 1983) ...................................................................1

*Carbone v. Cable News Network, Inc.,*
    910 F.3d 1345 (11th Cir. 2018)...................................4, 13, 36, 43, 54

*Chamberlain v. Giampapa,*
    210 F.3d 154 (3d Cir. 2000) .......................................................*passim*

*Corley v. United States,*
    11 F.4th 79 (2d Cir. 2021).................................................4, 15, 54

*Cox v. Dravo Corp.*,
　517 F.2d 620 (3d Cir. 1975) ...............................................................53

*Dambro v. Meyer*,
　974 A.2d 121 (Del. 2009) ...........................................................*passim*

*DeHart v. Horn*,
　390 F.3d 262 (3d Cir. 2004) ...............................................................32

*Dishmon v. Fucci*,
　32 A.3d 338 (Del. 2011) ...............................................5, 8, 34, 44, 45

*Dougherty v. Horizon House, Inc.*,
　2008 WL 3488532 (Del. Super. Ct. June 25, 2008) ......................42

*Duross v. Connections CSP, Inc.*,
　2019 WL 4391231 (Del. Super. Ct. Sept. 13, 2019).........8, 39, 44, 49

*Enhaili v. Patterson*,
　197 A.3d 491, 2018 WL 5877282 (Del. 2018) .............................8, 44

*Erie R.R. Co. v. Tompkins*,
　304 U.S. 64 (1938)..................................................................6, 9, 51

*Fletcher v. Dep't of Corr.*,
　856 F. App'x 359 (3d Cir. 2021) ......................................................46

*Foster v. Nat'l Fuel Gas Co.*,
　316 F.3d 424 (3d Cir. 2003) ...............................................................32

*Gallivan v. United States*,
　943 F.3d 291 (6th Cir. 2019).....................................................*passim*

*Gasperini v. Ctr. for Humans., Inc.*,
　518 U.S. 415 (1996).............................................................................17

*Hanna v. Plumer*,
　380 U.S. 460 (1965)................................................................9, 10, 17

*Hartman v. Corr. Med. Servs.*,
　366 F. App'x 453 (3d Cir. 2010) ......................................................46

*Ingersoll-Rand Fin. Corp. v. Anderson,*
  921 F.2d 497 (3d Cir. 1990) .......................................................35

*State ex rel. Jennings v. Purdue Pharma L.P.,*
  2019 WL 4676723 (Del. Super. Ct. Sept. 25, 2019)......................38

*Kanter v. Barella,*
  489 F.3d 170 (3d Cir. 2007) .......................................................36

*Karns v. Shanahan,*
  879 F.3d 504 (3d Cir. 2018) ..................................20, 50, 52, 53

*Khan v. Att'y Gen. of U.S.,*
  691 F.3d 488 (3d Cir. 2012) .........................................................1

*Klocke v. Watson,*
  936 F.3d 240 (5th Cir. 2019)................................................*passim*

*Knepper v. Rite Aid Corp.,*
  675 F.3d 249 (3d Cir. 2012) .......................................................12

*Lazy Oil Co. v. Witco Corp.,*
  166 F.3d 581 (3d Cir. 1999) ..................................................1, 29

*Leatherman v. Tarrant Cnty. Narcotics Intel. &*
  *Coordination Unit,*
  507 U.S. 163 (1993)................................................................36, 37

*Liggon-Redding v. Est. of Sugarman,*
  659 F.3d 258 (3d Cir. 2011) .................................................*passim*

*Mammarella v. Evantash,*
  93 A.3d 629 (Del. 2014) ...............................5, 8, 31, 34, 42

*Martin v. Pierce County,*
  34 F.4th 1125 (9th Cir. 2022) ............................................*passim*

*Palacio ex rel. Mitchell v. Premier Healthcare, Inc.,*
  2015 WL 13697664 (Del. Super. Ct. Aug. 11, 2015) ......................45

*Moore v. John A. Luchsinger, P.C.,*
  862 A.2d 631 (Pa. Super. Ct. 2004)................................................48

*Myers v. Med. Ctr. of Del., Inc.*,
    105 F. App'x 403 (3d Cir. 2004) ..................................................46

*Newell v. Ruiz*,
    286 F.3d 166 (3d Cir. 2002) ........................................................32

*Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v.*
    *WithumSmith Brown, P.C.*,
    692 F.3d 283 (3d Cir. 2012) ..................................................*passim*

*Oakwood Lab'ys LLC v. Thanoo*,
    999 F.3d 892 (3d Cir. 2021) ........................................................41

*Pledger v. Lynch*,
    5 F.4th 511 (4th Cir. 2021) ..................................................*passim*

*Roma v. United States*,
    344 F.3d 352 (3d Cir. 2003) ..........................................................1

*Schmigel v. Uchal*,
    800 F.3d 113 (3d Cir. 2015) ..................................................*passim*

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)..............................................................*passim*

*Sibbach v. Wilson & Co.*,
    312 U.S. 1 (1941)..............................................................11, 12

*Smith v. Kobasa*,
    113 A.3d 1081, 2015 WL 1903546 (Del. 2015)................................8, 39, 44, 49

*St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*,
    967 F.3d 295 (3d Cir. 2020) ........................................................41

*In re Tower Air, Inc.*,
    416 F.3d 229 (3d Cir. 2005) ........................................................35

*United States v. Henderson*,
    64 F.4th 111 (3d Cir. 2023)........................................................53

*United States v. Stevens*,
    70 F.4th 653 (3d Cir. 2023)............................................6, 31, 52, 53

*United States v. Tann,*
577 F.3d 533 (3d Cir. 2009) ........................................6, 20, 31, 50, 53

*Wilson v. United States,*
79 F.4th 312 (3d Cir. 2023).....................................20, 47, 50, 54, 55

*Woods v. First Corr. Med., Inc.,*
446 F. App'x 400 (3d Cir. 2011) ...................................................46

*Young v. United States,*
942 F.3d 349 (7th Cir. 2019).........................................4, 14, 36, 54

## Statutes

18 Del. C. § 6853 ..................................................................1, 3, 7, 30

18 Del. C. § 6853(a) ....................................................................7, 44

18 Del. C. § 6853(a)(1)..........................................3, 5, 8, 31, 39

18 Del. C. § 6853(a)(2) .................................................................8, 26

28 U.S.C. § 1291 ......................................................................1, 2, 27

28 U.S.C. § 1332 .............................................................................1

28 U.S.C. § 1334(b)........................................................................19

28 U.S.C. § 2072 ............................................................................10

N.J. Stat. Ann. §§ 2A:53A-26 *et seq.* ...................................46

N.J. Stat. Ann. § 2A:53A-27......................................................46

## Rules

Fed. R. Civ. P. 3 ............................................................................35, 39

Fed. R. Civ P. 4 .............................................................................35

Fed. R. Civ. P. 8 ...................................................................*passim*

Fed. R. Civ. P. 9 ...................................................................*passim*

Fed. R. Civ. P. 9(b) ..................................................................36

Fed. R. Civ. P. 11 ..........................................................*passim*

Fed. R. Civ. P. 12 ..........................................................*passim*

Fed. R. Civ. P. 12(b)(6) ..........................................................41

Fed. R. Civ. P. 23 ..........................................................11, 13

Pa. R. Civ. P. 1042.3 ..........................................................47, 48

Pa. R. Civ. P. 1042.3(a) ..........................................................20

Pa. R. Civ. P. 1042.7 ..........................................................48

## JURISDICTIONAL STATEMENT

Appellant Harold R. Berk (Mr. Berk) appeals the District Court's April 4, 2023 order dismissing his complaint. JA3. The District Court had jurisdiction under 28 U.S.C. § 1332. This Court has jurisdiction under 28 U.S.C. § 1291.[1]

## STATEMENT OF THE ISSUES

1. Whether Delaware's statute requiring that a complaint alleging medical negligence attach an affidavit of merit, 18 Del. C. § 6853, applies in federal court. JA5-7.

2. Whether this Court's decisions holding that federal courts must apply Pennsylvania and New Jersey provisions requiring a certificate or

---

[1] On April 5, 2023, the Court issued a letter informing Mr. Berk that the Court may lack appellate jurisdiction over this appeal because the order appealed from may not have resolved all claims and cross-claims in the action below. Doc. 3-1 at 1; *see infra* at 28. On April 11, 2023, the District Court issued an order dismissing pending cross-claims, resolving this Court's concern. JA186. As Mr. Berk explained in a counseled supplemental response to the Court's letter filed on May 26, 2023, Doc. 20, this Court's precedent plainly holds that a notice of appeal filed after disposition of some but not all claims in the District Court will ripen upon the District Court's disposal of the remaining claims when the adverse party makes no showing of prejudice. *See Khan v. Att'y Gen. of U.S.*, 691 F.3d 488, 493 (3d Cir. 2012); *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 585 (3d Cir. 1999); *Cape May Greene, Inc. v. Warren*, 698 F.2d 179, 184 (3d Cir. 1983). The District Court's April 11 order disposed of all remaining claims, and Appellees have not alleged any prejudice here, so the Court has jurisdiction over this appeal. *See, e.g.*, *Roma v. United States*, 344 F.3d 352, 355 n.2 (3d Cir. 2003); *Lazy Oil Co.*, 166 F.3d at 585-86.

affidavit of merit for malpractice actions are consistent with the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). JA 5-7.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

Mr. Berk previously filed an appeal of an order by the District Court in this case on March 9, 2023, initiating case number 23-1436 in this Court. Following a letter from the Court notifying Mr. Berk that the District Court's order may not be an appealable final order under 28 U.S.C. § 1291, Mr. Berk filed a motion under Federal Rule of Appellate Procedure 42(b) to voluntarily dismiss that appeal on March 21, 2023. The Court granted the motion and dismissed the appeal on March 24, 2023. Other than case number 23-1436, this case has not been before this Court previously.

On April 13, 2023, Mr. Berk filed an action in the Eastern District of Pennsylvania against certain medical providers alleging that they breached his statutory and common law rights by declining to consider providing him with an affidavit of merit for this case. *Berk v. Rothman Inst. Orthopedic Found.*, No. 2:23-cv-01437-JFM (E.D. Pa.). Other than Mr. Berk, none of the parties in the Eastern District of Pennsylvania action are parties to this case.

Mr. Berk is not aware of any other related matter that is or has been before this Court or any other court or agency.

## INTRODUCTION

In this diversity action, Appellant Harold R. Berk (Mr. Berk) challenges the dismissal of his medical malpractice complaint for failure to satisfy Delaware's "affidavit of merit" (AOM) statute, 18 Del. C. § 6853, which requires that every medical malpractice plaintiff file with their complaint "[a]n affidavit of merit as to each defendant signed by an expert witness … stating that there are reasonable grounds to believe that there has been health-care medical negligence committed by each defendant."  18 Del. C. § 6853(a)(1). Following the state statute's directive that a medical malpractice complaint filed without the accompanying affidavit may not be accepted by the court, the District Court dismissed Mr. Berk's complaint on April 4, 2023.

That decision was error.  The Delaware AOM statute conflicts with Federal Rule of Civil Procedure 8, among other Federal Rules, and therefore cannot be applied in federal court under the *Erie* doctrine, as clarified by the Supreme Court in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010).  Under *Shady Grove*, a state rule that "attempts to answer the same question" as a valid Federal Rule of Civil

Procedure cannot apply in federal court. *Id.* at 399. In recent years, several circuits, including the Second, Fourth and Sixth, have joined a "growing consensus" holding that comparable AOM provisions to Delaware's "do not govern actions in federal court" because they answer the same question as multiple Federal Rules. *Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021); *see Corley v. United States*, 11 F.4th 79 (2d Cir. 2021); *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019); *Albright v. Christensen*, 24 F.4th 1039 (6th Cir. 2022); *see also Martin v. Pierce County*, 34 F.4th 1125 (9th Cir. 2022); *Young v. United States*, 942 F.3d 349 (7th Cir. 2019). Multiple circuits have also applied *Shady Grove* to reject application of other state statutes imposing procedural requirements that conflict with the Federal Rules. *See, e.g.*, *Abbas v. Foreign Pol'y Grp., LLC,* 783 F.3d 1328 (D.C. Cir. 2015) (Kavanaugh, J.); *Klocke v. Watson*, 936 F.3d 240 (5th Cir. 2019); *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018).

This case presents a prime opportunity for this Court to embrace the prevailing approach to conflicts analysis under *Erie* and its progeny. Although the Court has addressed two states' AOM provisions and found no conflict with the Federal Rules in the past, *see Schmigel v. Uchal*, 800 F.3d 113 (3d Cir. 2015); *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v.*

*WithumSmith Brown, P.C.*, 692 F.3d 283 (3d Cir. 2012); *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011); *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000), those cases did not have the benefit of this emerging body of case law that applies *Shady Grove* to reach a contrary result.  The Court should set aside the approach from its prior decisions and join the rising tide of post-*Shady Grove* rulings rejecting application of state affidavit requirements in federal court.

Even if the Court does not embrace the "growing consensus" of other circuits, the Court should still reverse and remand because, contrary to the District Court's conclusion, this Court's prior decisions in this area do not control.  Unlike the Pennsylvania and New Jersey provisions at issue in the *Schmigel*, *Nuveen*, *Liggon-Redding*, and *Chamberlain*, the Delaware AOM statute imposes a pleading requirement.  *See Dishmon v. Fucci*, 32 A.3d 338, 342 (Del. 2011).  Without an affidavit, a Delaware medical negligence plaintiff cannot "get through the courthouse doors," *Mammarella v. Evantash*, 93 A.3d 629, 637 (Del. 2014), and "the Prothonotary or clerk of the court shall refuse to file the complaint and it shall not be docketed with the court," 18 Del. C. § 6853(a)(1).  This Court's prior case law, addressing only provisions that the

Court held do not create pleading requirements, does not apply to the Delaware statute.

To the extent the Court finds that its prior cases would control here, however, they should be disregarded. *See United States v. Stevens*, 70 F.4th 653, 659-60 (3d Cir. 2023); *United States v. Tann*, 577 F.3d 533, 541-42 (3d Cir. 2009). *Chamberlain* was issued before the Supreme Court refined the *Erie* analysis in *Shady Grove*, and *Nuveen* reiterated *Chamberlain*'s approach and largely left *Shady Grove* aside, while *Liggon-Redding* and *Schmigel* made no mention of *Shady Grove* at all. In light of *Shady Grove*'s clear mandate and the growing consensus of contrary persuasive authority, the Court should retire the approach taken in its prior cases, join its sister circuits in holding that AOM statutes may not be applied in federal court, and reverse.

## STATEMENT OF THE CASE

### A. Legal Background

#### 1. The Delaware Affidavit of Merit Statute

In 2003 amendments to Delaware's Medical Negligence Act, the Delaware General Assembly established a requirement "that all complaints alleging medical negligence be accompanied by an affidavit of merit, signed by a qualified expert witness and stating that there are reasonable grounds to believe that each defendant has committed medical negligence." *Dambro v.*

*Meyer*, 974 A.2d 121, 132-33 (Del. 2009) (citing 18 Del. C. § 6853). The statute provides in relevant part:

> (a) No health-care negligence lawsuit shall be filed in this State unless the complaint is accompanied by: (1) An affidavit of merit as to each defendant signed by an expert witness, as defined in § 6854 of this title, and accompanied by a current curriculum vitae of the witness, stating that there are reasonable grounds to believe that there has been health-care medical negligence committed by each defendant. If the required affidavit does not accompany the complaint or if a motion to extend the time to file said affidavit as permitted by paragraph (a)(2) of this section has not been filed with the court, then the Prothonotary or clerk of the court shall refuse to file the complaint and it shall not be docketed with the court.
> …
> (2) The court, may, upon timely motion of the plaintiff and for good cause shown, grant a single 60-day extension for the time of filing the affidavit of merit. Good cause shall include, but not be limited to, the inability to obtain, despite reasonable efforts, relevant medical records for expert review.
> (3) A motion to extend the time for filing an affidavit of merit is timely only if it is filed on or before the filing date that the plaintiff seeks to extend. The filing of a motion to extend the time for filing an affidavit of merit tolls the time period within which the affidavit must be filed until the court rules on the motion.
> (4) The defendant or defendants [sic] not required to take any action with respect to the complaint in such cases until 20 days after plaintiff has filed the affidavit or affidavits of merit.

18 Del. C. § 6853(a).

A plaintiff's affidavit of merit (AOM) "must be filed together with the complaint," *Beckett v. Beebe Med. Ctr., Inc.*, 897 A.2d 753, 756 (Del. 2006), in order for the case to "get through the courthouse doors," *Mammarella v. Evantash*, 93 A.3d 629, 637 (Del. 2014); *see also, e.g.*, *Duross v. Connections CSP, Inc.*, 2019 WL 4391231, at *3 (Del. Super. Ct. Sept. 13, 2019) (explaining a medical malpractice "[c]omplaint is statutorily deficient" when it lacks an AOM). "[W]here a party fails to file an Affidavit of Merit with the Superior Court, the Court will not entertain the case." *Dishmon v. Fucci*, 32 A.3d 338, 344-45 (Del. 2011) (citing 18 Del. C. § 6853(a)(1)); *see id.* at 342 (explaining the AOM is a "filing requirement[]"); *see also Smith v. Kobasa*, 113 A.3d 1081, 2015 WL 1903546, at *2 (Del. 2015). As a result, the statute effectively "requires an Affidavit of Merit signed by an expert witness to be obtained before a healthcare negligence lawsuit can be filed," *Dambro*, 974 A.2d at 133 (citation omitted), except that courts may "grant a single 60-day extension" "for good cause shown" in a motion filed with the complaint, *Kobasa*, 2015 WL 1903546, at *2 (citing 18 Del. C. § 6853(a)(2)). If the plaintiff is unable to obtain an AOM in that time, the complaint will be dismissed. *See, e.g.*, *Enhaili v. Patterson*, 197 A.3d 491, 2018 WL 5877282, at *1 (Del. 2018).

## 2. The *Erie* Doctrine After *Shady Grove*

The *Erie* doctrine "provides that a federal court sitting in diversity must apply substantive state law and federal procedural law." *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 302 (3d Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, "[w]here a Federal Rule of Civil Procedure provides a resolution of an issue, that rule must be applied by a federal court sitting in diversity to the exclusion of a conflicting state rule so long as the federal rule is authorized by the Rules Enabling Act and consistent with the Constitution." *Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000) (citing *Hanna v. Plumer*, 380 U.S. 460, 470 (1965)). "If there is a direct conflict, and the federal rule is 'constitutional and within the scope of the Rules Enabling Act,' [courts] apply the federal rule and end [the] analysis." *Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015) (quoting *Chamberlain*, 210 F.3d at 119). "'[I]f there is no direct collision,' [courts] examine 'whether the state law is outcome-determinative and whether failure to apply the state law would frustrate the twin aims of the *Erie* Rule to discourage forum shopping and avoid inequitable administration of the law.'" *Id.* (quoting *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011)).

In *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), the Supreme Court set out a framework for identifying and resolving conflicts between federal and state rules. First, the court considers whether any Federal Rules of Civil Procedure "answer the same question" as the state law or rule. *Id.* at 401. If so, the court asks whether the Federal Rules are valid under the Rules Enabling Act, 28 U.S.C. § 2072(a), and the federal Constitution. *Id.* at 398. If the answer to both questions is "yes," the analysis ends; the court must apply the Federal Rules over the state rule. *Id.*; *see also id.* at 404 (explaining that the "subjective intentions of the state legislature" in enacting the conflicting rule are irrelevant). Courts need not address the outcome-determinative inquiry and the twin aims—"*Erie*'s murky waters"—"unless the federal rule is inapplicable or invalid." *Id*. at 398 (citing *Hanna*, 380 U.S. at 469-71).

*Shady Grove* considered a New York statute on class action certification that largely mirrored Federal Rule of Civil Procedure 23 but prohibited class actions demanding certain damages, including the statutory interest sought by the petitioner. *Id.* at 396 n.1. At the first step of the conflict inquiry, the Court explained that "[t]he question in dispute is whether [the petitioner's] suit may proceed as a class action." *Id.* at 398. "Rule 23 provides an answer,"

the Court held, by "creat[ing] a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action" in federal court—"a one-size-fits-all formula for deciding … whether a class action may proceed for a given suit." *Id.* at 398-99, 401. The Court explained that the text of Rule 23 "permits *all* class actions that meet its requirements, and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements." *Id.* at 401 (emphasis added). Accordingly, because the New York statute "attempts to answer the same question" as Rule 23—"*i.e.*, it states that [the petitioner's] suit 'may not be maintained as a class action' because of the relief it seeks—it cannot apply in diversity suits unless Rule 23 is ultra vires." *Id.* at 399.

The Court issued no majority opinion on the proper analysis for the second step. *See id.* at 395-96. A four-justice plurality looked to *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941), which held that the Rules Enabling Act authorizes any rule that "really regulates procedure," meaning "the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." 559 U.S. at 407 (plurality opinion) (quoting *Sibbach*, 312 U.S. at 14). Applying that test, the plurality found that Rule 23 is valid under the Rules Enabling

Act, consistent with the Court's unbroken line of decisions upholding Federal Rules. *Id.* at 408 (plurality opinion); *see Knepper v. Rite Aid Corp.*, 675 F.3d 249, 265 (3d Cir. 2012). In a concurrence, Justice Stevens proposed a more case-specific approach to the Rules Enabling Act inquiry that would consider the impact of federal displacement of state rules on state-created rights and state legislative purposes. *Shady Grove*, 559 U.S. at 422-24 (Stevens, J., concurring in part and concurring in the judgment). Because the four dissenting justices did not consider the issue, the Court lacked five votes for any change to the second-step framework, and the existing test from *Sibbach* therefore remains governing law. *See Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1336-37 (D.C. Cir. 2015) (Kavanaugh, J.).

### 3. Other Circuits' Implementation of *Shady Grove*

Over the past decade, several circuits have applied *Shady Grove*'s refined conflicts analysis to hold that some state statutes and rules do not apply in federal court because they answer the same question as the Federal Rules but in a different manner. A central theme across the case law is "*Shady Grove*'s conclusion that states may not superimpose additional requirements on the Federal Rules where the provisions 'answer the same question.'" *Klocke v. Watson*, 936 F.3d 240, 247 (5th Cir. 2019) (quoting *Shady Grove*, 559

U.S. at 399). Relevant here, courts have repeatedly found that federal and state rules "'answer the same question' when each specifies requirements for a case to proceed at the same stage of litigation." *Id.* at 245; *see also Abbas*, 783 F.3d at 1334 (state provisions that "set[] up an additional hurdle a plaintiff must jump over to get to trial," including rules that "nullif[y]" a plaintiff's "entitle[ment] to trial if he or she meets the Rules 12 and 56 standards to overcome a motion to dismiss or for summary judgment," conflict with and are preempted by the Federal Rules).

Several circuits have applied that reasoning to bar application of state affidavit of merit rules for malpractice cases. The leading case is *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019), in which the Sixth Circuit held that Ohio's affidavit of merit requirement does not apply in federal court. *Id.* at 293. Mirroring *Shady Grove*'s textual analysis of Rule 23, the Sixth Circuit reasoned that the pleading requirements set out by Federal Rule of Civil Procedure 8—"(1) a short and plain jurisdictional statement, (2) a short and plain statement of the claim, and (3) an explanation of the relief sought"— "implicitly 'exclude[] other requirements that must be satisfied for a complaint to state a claim for relief.'" *Id.* at 293 (quoting *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1352 (11th Cir. 2018)). "Rule 8 does not require

litigants to file any affidavits." *Id.*; *cf. Klocke*, 936 F.3d at 247 ("[T]he Federal Rules impose comprehensive, not minimum, pleading requirements.").

Nor, *Gallivan* reasoned, does Rule 12 or Rule 9. 943 F.3d at 293. A complaint survives a Rule 12(b)(6) motion to dismiss by simply alleging facts sufficient to state a facially plausible claim for relief, with no evidentiary support needed. *Id.* (citing *Klocke*, 936 F.3d at 246). And Rule 9 specifies the exclusive set of situations when a heightened pleading requirement applies, none of which necessarily exist in a medical negligence case. *Id.* at 293-94; *cf. Chamberlain*, 210 F.3d at 160 ("The only situations that require pleading with particularity are specified in Fed. R. Civ. P. 9, and a malpractice claim is not one of the situations listed in that rule."). The Federal Rules thus "answer" in the negative "the question in dispute: does someone need an affidavit of merit to state a claim for medical negligence?" *Gallivan*, 943 F.3d at 293; *see also Albright v. Christensen*, 24 F.4th 1039, 1045-46 (6th Cir. 2022) (applying *Gallivan* and declining to apply Michigan's affidavit requirement).

Multiple circuits have followed or paralleled *Gallivan*'s approach to affidavits of merit, known as certificates of merit in some states. Considering Illinois's affidavit requirement in *Young v. United States*, 942 F.3d 349 (7th Cir. 2019), the Seventh Circuit held that malpractice complaints may not be

dismissed for lack of an affidavit because Rule 8 "does not require attachments." *Id.* at 351. The Fourth Circuit, noting "a growing consensus that certificate requirements like West Virginia's do not govern actions in federal court," held in *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021), that "the Federal Rules governing the sufficiency of pleadings," including Rules 8, 9, 11, and 12, "supplant West Virginia's certificate requirement." *Id.* at 518-20. "Under *Shady Grove*," *Pledger* found, "what matters is whether the 'one-size-fits-all formula' for filing and maintaining a complaint set out by the Federal Rules is enough to 'provide[] an answer' to the question at issue: whether a plaintiff must obtain an expert certificate of merit before he may file and maintain a medical malpractice suit." *Id.* at 520 (quoting *Shady Grove*, 559 U.S. at 398-99). "Because the Federal Rules answer that question in the negative, West Virginia's [certificate requirement] cannot apply to Pledger's federal-court action under step one of the *Shady Grove* framework." *Id.* (citing *Shady Grove*, 559 U.S. at 398-99).

The Second Circuit followed suit in *Corley v. United States*, 11 F.4th 79 (2d Cir. 2021), citing *Gallivan* as "instructive" and holding that Connecticut's certificate requirement conflicts with Rule 8 and accordingly does not apply in federal court. *Id.* at 88-89. Rule 8, the court explained, "embodies a policy of

'notice pleading' that eschews the need to plead specific types of documentary evidence to establish a plausible claim." *Id.* at 89 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Most recently, in *Martin v. Pierce County*, 34 F.4th 1125 (9th Cir. 2022), the Ninth Circuit declined to apply a Washington law requiring medical malpractice plaintiffs to file a declaration electing or declining arbitration. *Id.* at 1132. Citing the "growing consensus" on state malpractice pleading requirements noted in *Pledger*, the Ninth Circuit concluded that the Federal Rules displace the Washington provision. *Id.* at 1129-30 (quoting *Pledger*, 5 F.4th at 518). The court agreed with *Gallivan* and *Pledger* that "Rule 8's requirement of a 'short and plain statement' of the plaintiff's claim, jurisdictional statement, and explanation of the relief sought is 'a list of elements that implicitly excludes other requirements.'" *Id.* (quoting *Pledger*, 5 F.4th at 519).

### 4. This Court's *Erie* Doctrine

Despite these developments in other circuits, this Court has yet to fully address *Shady Grove*'s refinement of the *Erie* inquiry. Its decisions addressing potential conflicts between state and federal rules have instead remained grounded in the Court's pre-*Shady Grove* decision in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). *Chamberlain*, which addressed New

Jersey's affidavit of merit statute, applied a conflict analysis drawn from *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996), which advised that in evaluating conflicts under *Hanna v. Plumer*, 380 U.S. 460 (1965), "[f]ederal courts have interpreted the Federal Rules … with sensitivity to important state interests and regulatory policies." *Chamberlain*, 210 F.3d at 159 (quoting *Gasperini*, 518 U.S. at 427 n.7). Under that approach, *Chamberlain* held that the New Jersey provision did not "direct[ly] conflict" or "directly collide[]" with Federal Rules 8 and 9 because New Jersey's goal of reducing unsupported malpractice filings could be effectuated "without compromising any of the policy choices reflected in Federal Rules 8 and 9." *Id.* at 159-61.

As other circuits have concluded, that compatibility-of-purpose mode of conflict analysis was left behind in *Shady Grove*. In *Gallivan*, for example, the Sixth Circuit explained that the inquiry under *Shady Grove* "isn't whether the federal and state rules can coexist but whether the Federal Rules 'answer[ ] the question in dispute.'" 943 F.3d at 296 (quoting *Shady Grove*, 559 U.S. at 398); *see also Pledger*, 5 F.4th at 520 (clarifying that under *Shady Grove*, it is irrelevant that "it would be possible for a claimant to comply with both the Federal Rules and [state] law" (internal quotation marks omitted)); *Martin*,

34 F.4th at 1130 ("The relevant inquiry is not whether the federal and state rules share a purpose but whether the Federal Rules 'answer[ ] the question in dispute.'" (quoting *Shady Grove*, 559 U.S. at 398)). Moreover, "*Shady Grove* emphasized that the purpose of the rules is irrelevant when the text is clear." *Gallivan*, 943 F.3d at 296 (citing *Shady Grove*, 559 U.S. at 403); *see also Martin*, 34 F.4th at 1130 (same); *Shady Grove*, 559 U.S. at 404 (holding that "the subjective intentions of the state legislature" in enacting the rule are not relevant for conflict analysis).

Nonetheless, unlike *Gallivan* and the subsequent cases addressing state affidavit requirements, this Court's case law has not incorporated *Shady Grove*'s guidance on assessing conflicts between state and federal rules, but has instead continued to rely primarily on *Chamberlain*. Until this year, the Court since *Chamberlain* had issued three published opinions considering federal court application of state affidavit of merit provisions. None utilized *Shady Grove*'s "answer the same question" test for addressing conflicts. First, in *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011), the Court held that Pennsylvania's certificate of merit (COM) requirement does not "directly collide" with the Federal Rules. *Id.* at 262-64. Relying on *Chamberlain*, the Court reasoned that the Pennsylvania rule has a different

function and purpose from Federal Rules 8, 9, and 11, and therefore "can co-exist." *Id.* at 262-64. The Court made no mention of *Shady Grove*, which was issued more than a year earlier. Then, in *Schmigel v. Uchal*, 800 F.3d 113 (3d Cir. 2015), the Court extended *Liggon-Redding* to hold that another aspect of the COM regime also applies in federal court. *Id.* at 121-24. Again, the Court did not cite *Shady Grove*, relying solely on *Liggon-Redding* and *Chamberlain*.

The Court's only case meaningfully citing *Shady Grove* in this context is *Nuveen Municipal Trust ex rel. Nuveen High Yield Municipal Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283 (3d Cir. 2012), brought under 28 U.S.C. § 1334(b), which provides federal court jurisdiction over cases "related to" a bankruptcy proceeding. Like *Chamberlain*, *Nuveen* addressed New Jersey's affidavit requirement and reaffirmed that it does not conflict with Federal Rules 8 and 9. *Id.* at 302-04. Although the Court noted the *Shady Grove* plurality's approach on the second step of the conflict framework, which concerns the Rules Enabling Act, the Court did not consider whether the New Jersey rule attempts to answer the same question as the Federal Rules, instead again relying on *Chamberlain*. *Compare Nuveen*, 692 F.3d at 302-04, *with Shady Grove*, 559 U.S. at 399, 409-10.

Recently, however, in *Wilson v. United States*, No. 22-1940, a Pennsylvania medical malpractice case under the Federal Torts Claims Act (FTCA), this Court ordered supplemental briefing to address two questions:

> 1) whether this Court's application of Pennsylvania Rule of Civil Procedure 1042.3(a), *see, e.g.*, *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 264-65 (3d Cir. 2011), follows the Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) and, 2) whether this Court's decisions applying Rule 1042.3(a) are binding if inconsistent with the Supreme Court's holdings, *see, e.g.*, *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009) and *Karns v. Shanahan*, 879 F.3d 504, 514-15 (3d Cir. 2018).

Clerk's Letter to Counsel, *Wilson v. United States*, No. 22-1940 (3d Cir. June 7, 2023), Doc. 45. Though the parties submitted detailed letter briefs addressing these issues, *see id.* Docs. 46, 47, the Court's opinion did not cite *Shady Grove* and instead held only that Pennsylvania's COM rule does not apply in federal courts exercising jurisdiction under the FTCA. *Wilson v. United States*, 79 F.4th 312, 316-17 (3d Cir. 2023). The Court distinguished *Schmigel*, *Liggon-Redding*, *Chamberlain*, and *Nuveen* as addressing choice of law only for diversity and "related to" bankruptcy jurisdiction cases, and did not consider whether *Shady Grove* impacts those decisions' continuing validity. *See id.* at 317-19 & n.5.

## B. Factual Background

Mr. Berk is a resident and citizen of Florida. JA122. He also owns a home in Lewes, Delaware. JA122. In the early morning hours on August 20, 2020, Mr. Berk fell out of bed at his Delaware home and sustained an injury to his left ankle and foot. JA123. He was taken by ambulance to the emergency room at Beebe Healthcare, a nearby medical facility owned by Appellee Beebe Medical Center, Inc. (Beebe), where medical staff examined and took X-ray images of his injury. JA123, JA132. A radiologist reviewed the X-rays and diagnosed mild fractures of the tibia and fibula. JA123-24, JA131. Appellee Wilson C. Choy, M.D. (Dr. Choy), also reviewed the X-rays and recommended that Mr. Berk's ankle be placed in a splint to treat the fractures. JA124. Because Mr. Berk had chronic wounds in his lower extremities, however, Dr. Choy agreed that a "CAM boot" (controlled ankle motion boot) should be used to stabilize and immobilize the ankle instead. JA124.

Beebe emergency department staff then attempted to fit Mr. Berk with a CAM boot. JA124-25. Unfortunately, the staff had serious difficulty placing the boot on Mr. Berk's leg. JA124-25. After several failed attempts, the staff eventually resorted to using intense physical force, twisting and turning Mr. Berk's leg and manipulating it in multiple directions as they attempted to

apply the boot. JA124-25, JA131. The violent forcing of the boot onto Mr. Berk's leg aggravated and worsened his existing ankle fractures, causing him to suffer extreme pain. JA124-25, JA131-33. After Mr. Berk repeatedly cried out and exclaimed at the intense pain, the staff removed the boot and instead applied a fiberglass splint, recording in notes that Mr. Berk "could not tolerate the CAM boot." JA124-25, JA133. Despite the immense pain Mr. Berk had displayed during the attempted fitting of the CAM boot, no additional X-ray imaging of his ankle was taken. JA124-25, JA132. Instead, Mr. Berk was administered Dilaudid, a powerful opioid pain reliever. JA125, JA132.

Mr. Berk remained hospitalized through the day on August 20. JA125. Late that evening, Dr. Choy visited Mr. Berk for the first time and advised that Mr. Berk did not require surgery for either the tibia or fibula fracture and that splinting or a CAM boot would treat the injury sufficiently, although Dr. Choy cautioned that Mr. Berk should not put weight on his left leg for eight weeks. JA125, JA134-35. Dr. Choy gave no indication that he had consulted the emergency department staff about their failed and harmful efforts to apply the CAM boot to Mr. Berk's leg. JA125, JA134. Nor did Dr. Choy order an additional X-ray. JA133.

Mr. Berk remained hospitalized at Beebe until August 23, 2020, during which time he was also administered Oxycodone, another opioid pain reliever. JA125-26. No additional X-rays were taken of Mr. Berk's leg at Beebe. JA126. Beebe then arranged for Mr. Berk to continue his recovery at Encompass Health Rehabilitation Hospital of Middletown, owned by Appellee Encompass Health Rehabilitation Hospital of Middletown, LLC (Encompass). JA126. While admitted at the Encompass facility, Mr. Berk noticed that his left leg appeared deformed and was oriented inappropriately leftward. JA126. Mr. Berk informed Encompass staff of the apparent issue, but no X-rays were taken of Mr. Berk's leg, despite Encompass's location immediately across from a hospital. JA126, JA135. According to treatment records, Encompass staff noted that Mr. Berk's left foot appeared to be "somewhat rotated externally" and indicated that a physician would be consulted, but to Mr. Berk's knowledge, no consultation ever occurred. JA126-27, JA135.

Mr. Berk also engaged in physical and occupational therapy while at Encompass. JA126. In one exercise, Mr. Berk was required to pull himself into a standing position on parallel bars. JA126-27. That activity required Mr. Berk to place weight onto his left leg, despite Dr. Choy's orders to the contrary. JA126-27, JA135. Records from Encompass indicate that

Encompass was fully aware that Mr. Berk was to be "nonweightbearing [sic] in the left lower extremity." JA126.

Mr. Berk was discharged from Encompass on September 7, 2020. JA127. On approximately September 15, 2020, Mr. Berk attended an appointment at the office of Dr. Choy, who was not present. JA128. Instead, Dr. Choy's physician assistant ordered an X-ray of Mr. Berk's left ankle. JA128. On review of the imaging, the physician assistant explained that Mr. Berk's leg was severely deformed and that his fractured bones were pointing in three different directions. JA128. After consulting with Dr. Choy by phone, the physician assistant told Mr. Berk that he required immediate surgery to correct the deformities in his ankle and leg. JA128, JA132. However, Dr. Choy would not perform the surgery himself, the physician assistant explained, due to heart conditions Mr. Berk had developed prior to his ankle injury. JA128.

Following his appointment with Dr. Choy's office, Mr. Berk contacted Dr. Steven Raikin, then-head of the ankle and foot practice at the Rothman Orthopaedic Institute (the Rothman Institute), and scheduled an appointment for September 23, 2020. JA128. At this appointment, upon reviewing the X-rays taken at Dr. Choy's office, Dr. Raikin advised that they showed a major

deformity of Mr. Berk's left ankle and that urgent surgery was necessary. JA128-29.  Mr. Berk was admitted to Thomas Jefferson University Hospital in Philadelphia (Jefferson Hospital) the same day.  JA129.  After consulting with Mr. Berk's cardiologist, Dr. Raikin performed the surgery, manipulating the bones of Mr. Berk's ankle and installing an external fixator device to hold the ankle in alignment as it healed.  JA129.

Mr. Berk was discharged and returned home about a week after the surgery.  JA129.  Throughout his post-surgical recovery, the external fixator caused Mr. Berk constant, significant pain, especially when riding in cars or attempting to sleep.  JA129-30.  Mr. Berk endured approximately four months with the fixator, during which he was unable to engage in significant physical or occupational therapy and required repeated treatments for leg ulcers. JA129-30.  Finally, in late January 2021, Mr. Berk was readmitted to Jefferson Hospital, where Dr. Raikin performed successful surgery to remove the external fixator.  JA130.

Approximately a week later, Mr. Berk was discharged and taken to Magee Rehabilitation Hospital in Philadelphia.  JA130.  Following extensive physical and occupational therapy, Dr. Raikin cleared Mr. Berk to place weight on his left leg in March 2021, and Mr. Berk was able to walk short steps

using a walker.  JA130.  Mr. Berk was discharged from the rehabilitation hospital on approximately March 15, 2021, and then commenced further therapy at another facility in Rehoboth, Delaware.  JA130-31.  After approximately seven months, Mr. Berk was able to walk short distances using a cane.  JA131.  As of November 2022, Mr. Berk continued to have balance problems and weakness in his legs, requiring use of a cane for balance and mobility.  JA131.

## C.  Procedural History

On November 18, 2022, Mr. Berk filed this action *pro se* in the District of Delaware alleging claims of medical negligence against Beebe, Dr. Choy, and Encompass.  JA19.  Attempting to comply with the Delaware affidavit of merit (AOM) statute, Mr. Berk filed with the complaint a motion under 18 Del. C. § 6853(a)(2) for a 60-day extension of time to file his affidavit, JA35, which the District Court granted, JA40.[2]  In the meantime, each defendant answered and filed cross-claims against its codefendants.  JA41, JA58, JA75.  On January 17, 2023 and January 19, 2023, Mr. Berk filed medical records and

---

[2] Mr. Berk attached to the motion a copy of a Notice of Intent to Investigate that he had mailed to the prospective defendants on August 11, 2022, which tolled the two-year statute of limitations for his medical negligence claims for 90 days pursuant to 18 Del. C. § 6856(4).  JA35.

documents from Beebe, Jefferson Hospital, and the Rothman Institute under seal in an effort to satisfy the AOM requirement.  JA13.

On January 24, 2023, Beebe, Encompass, and Dr. Choy filed motions seeking *in camera* review of the sealed filings in order to assess whether they satisfied the AOM statute.  JA89, JA96, JA99.  Mr. Berk filed an omnibus opposition to the motions on January 29, arguing, *inter alia*, that the Delaware AOM statute does not apply in diversity actions in federal court.  JA102, JA104-18.  The following day, Mr. Berk filed an amended complaint, adding a claim against Beebe alleging a failure to train its employees, as well as assault and battery claims against Beebe and Encompass.  JA122.  Mr. Berk later voluntarily dismissed those claims.  JA183.

On March 9, 2023, the District Court issued an order finding that Mr. Berk's sealed filings were insufficient to satisfy the AOM requirement and directing Mr. Berk to show cause within one week why his case should not be dismissed for failure to file an AOM.  JA4.  Mr. Berk filed a notice of appeal of that order the same day, initiating case number 23-1436 in this Court.  *See* JA16.  Following a letter from this Court notifying Mr. Berk that the District Court's show cause order may not be an appealable final order under 28 U.S.C. § 1291, Mr. Berk voluntarily dismissed that appeal.  *See* JA17.

On April 4, 2023, the District Court dismissed Mr. Berk's claims without prejudice for failure to comply with the AOM requirement. JA3, JA5. The District Court found that under this Court's case law, federal courts are required to apply the Delaware AOM statute in diversity cases, and the medical records Mr. Berk submitted were insufficient to satisfy the affidavit requirement. JA5-7.

Mr. Berk filed a notice of appeal the same day. JA1. The following day, April 5, 2023, this Court issued a letter informing Mr. Berk that the Court may lack appellate jurisdiction because the District Court's order may not have resolved the defendants' cross-claims. Doc. 3-1 at 1. Mr. Berk filed a letter in the District Court the same day requesting that it dismiss the cross-claims. JA17. On April 6, Beebe, Encompass, and Dr. Choy filed a joint letter expressing no opposition to without-prejudice dismissal of the cross-claims. JA17-18. The District Court issued an order dismissing the cross-claims on April 11. JA186. On April 12, Mr. Berk filed a response to this Court's April 5 letter advising the Court of the dismissal of the cross-claims. Doc. 6-1.[3] Appellees did not file any response to the Court's letter.

_____

[3] On April 13, 2023, Mr. Berk filed a separate action against the Rothman Institute, related entities, and three physicians alleging that they breached his

28

On May 26, 2023, with the assistance of *pro bono* counsel, Mr. Berk filed a supplemental response to the Court's April 5 letter explaining that any jurisdictional defect in this appeal was remedied upon the District Court's dismissal of the cross-claims on April 11.  Doc. 20 (citing, *inter alia*, *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 585 (3d Cir. 1999)); *see supra* at 1 n.1.  On June 6, 2023, the Court issued an Order stating that the Clerk of the Court would not submit this appeal for dismissal, that filings concerning jurisdiction would be referred to the merits panel, and that the parties should address the Court's jurisdiction in their merits briefing.  Doc. 21.[4]

## SUMMARY OF ARGUMENT

The District Court erred in dismissing Mr. Berk's complaint because the Delaware affidavit of merit statute does not apply in federal court.

---

statutory and common law rights as their patient by declining to review Dr. Raikin's medical records and provide Mr. Berk with an AOM, if deemed appropriate, in light of a statement by Dr. Raikin to Mr. Berk that he had a good case for a malpractice action.  *Berk v. Rothman Inst. Orthopedic Found.*, No. 2:23-cv-01437-JFM (E.D. Pa.).  Mr. Berk filed an amended complaint with attached exhibits on July 12, 2023.  JA187-243.  On August 21, 2023, this Court granted Mr. Berk's motion requesting that the Court take judicial notice of the amended *Rothman Institute* complaint and its exhibits and permit inclusion of those materials in the appendix for this appeal.  Doc. 36.

[4] *See* Jurisdictional Statement, *supra*, at 1.

I.A. Under the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), a state statute or rule that "attempts to answer the same question" as a valid Federal Rule of Civil Procedure cannot apply in federal court. *Id.* at 399. Delaware's affidavit of merit statute, 18 Del. C. § 6853, attempts to answer the same question as Federal Rules of Civil Procedure 8, 9, 11, and 12—whether a medical negligence complaint must be accompanied by an affidavit of merit—and therefore does not apply in this case. This Court should embrace the "growing consensus" that state affidavit of merit requirements "do not govern actions in federal court" and reverse the District Court's dismissal of the complaint. *Pledger v. Lynch*, 5 F.4th 511, 518 (4th Cir. 2021) (collecting cases).

B. Even if the Court declines to embrace the approach of its sister circuits, the Court should reverse because the case law the District Court cited in dismissing the complaint does not control. The District Court reasoned that it was bound by decisions of this Court finding no conflict between the Federal Rules and Pennsylvania and New Jersey provisions that require a certificate or affidavit of merit for malpractice actions. JA5-7. But those cases are inapposite. Unlike the Delaware statute, the Pennsylvania and New Jersey provisions do not impose pleading requirements, per this Court's holdings;

under those regimes, the affidavit or certificate "need not be filed until well after the complaint." *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 263 (3d Cir. 2011). The "temporal separation" between the filing of the complaint and the affidavit, the Court has held, precludes a conflict with the Federal Rules. *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 303 (3d Cir. 2012). Delaware's statute, in sharp contrast to Pennsylvania's and New Jersey's rules, bars courts from even *accepting* a complaint for medical negligence that lacks an accompanying affidavit. 18 Del. C. § 6853(a)(1); *see Mammarella v. Evantash*, 93 A.3d 629, 637 (Del. 2014) (explaining an affidavit of merit is required to "get through the courthouse doors"). The Delaware statute thus imposes a pleading requirement that directly collides with Rule 8 and cannot apply in federal court under the reasoning of this Court's prior cases.

II. If the Court finds its case law addressing the Pennsylvania and New Jersey provisions does control, the Court should disregard or overrule those decisions because *Shady Grove* abrogated the choice-of-law analysis they applied. *See United States v. Stevens*, 70 F.4th 653, 659-60 (3d Cir. 2023); *United States v. Tann*, 577 F.3d 533, 541-42 (3d Cir. 2009). Though three of the decisions post-dated *Shady Grove*, each analyzed conflicts between state

and federal rules using an approach developed in the pre-*Shady Grove* case *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000), which examined the policies underlying the state requirements to determine whether they "directly collide[]" with the Federal Rules. *Id.* at 159-60. *Shady Grove* squarely rejected that approach when it held that state rules may not be applied when they "answer the same question" as a Federal Rule, whatever the "subjective intentions of the state legislature." 559 U.S. at 401-04. *Chamberlain* and its progeny did not survive *Shady Grove*, so the Court should disavow those cases and reverse the dismissal of the complaint.

## STANDARD OF REVIEW

This Court exercises plenary review over conclusions of law. *Schmigel v. Uchal*, 800 F.3d 113, 116 n.4 (3d Cir. 2015) (citing *Foster v. Nat'l Fuel Gas Co.*, 316 F.3d 424, 430 (3d Cir. 2003)). Dismissal for failure to comply with a state's affidavit of merit requirement involves a pure question of law. *Id.*; *see also Booker v. United States*, 366 F. App'x 425, 426 (3d Cir. 2010) (citing *Newell v. Ruiz*, 286 F.3d 166, 167 n.2 (3d Cir. 2002)). This Court also exercises plenary review over decisions granting motions to dismiss. *Nuveen*, 692 F.3d at 293; *see Booker*, 366 F. App'x at 426 (citing *DeHart v. Horn*, 390 F.3d 262, 272 (3d Cir. 2004)).

# ARGUMENT

## I. Delaware's Affidavit of Merit Statute Does Not Apply in Federal Court

For all of the reasons that a "growing consensus" of federal courts have cited to reject state affidavit or certificate of merit requirements, *see supra*, Statement of the Case, section A.3, this Court should reverse the District Court and hold that Mr. Berk is not required to file an AOM for this case. Under the controlling framework from *Shady Grove*, Federal Rules of Civil Procedure 8, 9, 11, and 12 "answer 'the same question'" as the Delaware AOM statute: "does someone need an affidavit of merit to state a claim for medical negligence?" *Gallivan v. United States*, 943 F.3d 291, 293 (6th Cir. 2019) (quoting *Shady Grove*, 559 U.S. at 399). As a result, Delaware's statute "cannot apply to [Mr. Berk's] federal-court action under step one of the *Shady Grove* framework." *Pledger*, 5 F.4th at 520 (citing *Shady Grove*, 559 U.S. at 398-99). And at *Shady Grove*'s step two, there is "no contention that Federal Rules 8 and 9 are beyond the scope of the Rules Enabling Act or inconsistent with the Constitution." *Chamberlain*, 210 F.3d at 160. So too with Rules 11 and 12. *See Pledger*, 5 F.4th at 521 (upholding Rule 11); *Gallivan*, 943 F.3d at 294 (Rule 12). The Federal Rules therefore "supplant" and bar application of Delaware's AOM statute in federal court. *Pledger*, 5 F.4th at 519.

Even if the *Shady Grove* framework does not apply, however, the Court should reverse the District Court and hold that this case is not controlled by existing authority. Unlike the Pennsylvania and New Jersey provisions the Court has examined in the past, *see supra*, Statement of the Case, section A.4, satisfying the Delaware AOM statute is a requirement for *initiating* a medical malpractice case. In contrast, the Court has held that the New Jersey statute at issue in the *Nuveen* and *Chamberlain* cases "is not a pleading requirement," and the affidavit it requires "is not part of the complaint, nor does it need to be filed with the complaint." *Nuveen*, 692 F.3d at 303; *see also id.* (explaining that "the temporal separation of the filing of the complaint and the affidavit" prevents a conflict with the Federal Rules). The same is true for the Pennsylvania certificate of merit, which "need not be filed until well after the complaint." *Liggon-Redding*, 659 F.3d at 263. The Delaware AOM statute, on the other hand, is a "filing requirement[]," without which the court "will not entertain the case." *Dishmon v. Fucci*, 32 A.3d 338, 344-45 (Del. 2011). There is no "temporal separation," *Nuveen*, 692 F.3d at 303, when the AOM is mandatory to "get through the courthouse doors," *Mammarella*, 93 A.3d at 637. For these and other reasons, the Delaware statute establishes a pleading

requirement that directly collides with the Federal Rules and thus is inapplicable in federal court, even under a pre-*Shady Grove* analysis.

### A. The Delaware Statute Attempts to Answer the Same Question as Multiple Federal Rules of Civil Procedure

As several circuits have concluded in applying *Shady Grove* to similar state affidavit requirements, the Delaware AOM statute conflicts with Federal Rules 8, 9, 11, and 12. Because the Delaware statute attempts to answer the same question as these rules—"does someone need an affidavit of merit to state a claim for medical negligence?"—the Federal Rules displace the AOM requirement in federal court. *Gallivan*, 943 F.3d at 293.

#### 1. Delaware's Affidavit of Merit Statute Conflicts with Federal Pleading Requirements

The Federal Rules govern the sufficiency of pleadings for civil actions in federal court. *In re Tower Air, Inc.*, 416 F.3d 229, 237 n.11 (3d Cir. 2005) (citing *Ingersoll-Rand Fin. Corp. v. Anderson*, 921 F.2d 497, 501 (3d Cir. 1990)). Under Federal Rules 3 and 4, a federal action is "commenced" by filing and serving a complaint. Fed. R. Civ. P. 3; Fed. R. Civ P. 4. Per Rule 8, the complaint "must contain: (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the

relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8; *see Kanter v. Barella*, 489 F.3d 170, 175 (3d Cir. 2007). That limited set of requirements was established "in a deliberate departure from the more detailed pleading requirements of the past." *Pledger*, 5 F.4th at 519. "By listing these elements, Rule 8 implicitly 'excludes other requirements that must be satisfied for a complaint to state a claim for relief.'" *Gallivan*, 943 F.3d at 293 (quoting *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1352 (11th Cir. 2018)). No further substantive submissions are needed, in the form of affidavits or otherwise. *See id.*; *see also Young v. United States*, 942 F.3d 349, 351 (7th Cir. 2019) ("Rule 8 … does not require attachments"); *accord Martin v. Pierce County*, 34 F.4th 1125, 1129-30 (9th Cir. 2022).

Federal Rule 9 confirms the exclusiveness of the Rule 8 requirements "by specifying the few situations when heightened pleading *is* required—for instance, when a party alleges fraud or mistake." *Gallivan*, 943 F.3d at 293 (citing Fed. R. Civ. P. 9(b)); *see Pledger*, 5 F.4th at 519-20 (citing *Gallivan*, 943 F.3d at 293). Because Rule 9 imposes a heightened pleading standard only in certain enumerated contexts, no heightened standard applies outside those contexts. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination*

*Unit*, 507 U.S. 163, 168 (1993) (applying the *expressio unius* interpretive canon to Rule 9). All other complaints must merely meet "the Federal Rules' baseline pleading standard." *Pledger*, 5 F.4th at 519-20; *cf. Chamberlain*, 210 F.3d at 160 ("The only situations that require pleading with particularity are specified in Fed. R. Civ. P. 9, and a malpractice claim is not one of the situations listed in that rule.").

The Delaware AOM statute conflicts with federal pleading standards because it "requires more" than Rule 8, mandating that "a plaintiff not only provide a 'short and plain statement' of his claim in order to file suit, but also serve a[n] [affidavit] attesting to the merit of that claim." *Pledger*, 5 F.4th at 519. Similarly, while Rule 9 specifies the limited circumstances when a heightened pleading requirement applies in federal court, the Delaware statute imposes a higher threshold in an additional context: "all plaintiffs filing a medical negligence action [must] accompany their complaint [with] an affidavit of merit from a competent expert, stating that the expert has reasonable grounds to believe that each defendant committed healthcare negligence." *Dambro v. Meyer*, 974 A.2d 121, 126 (Del. 2009). The affidavit must set forth "expert medical testimony … alleg[ing] a deviation from the applicable standard of care," *Beckett v. Beebe Med. Ctr., Inc.*, 897 A.2d 753, 757

(Del. 2006), "and that the breach was a proximate cause of the injury or injuries claimed," *Dambro*, 974 A.2d at 126; *see also State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 4676723, at *2 (Del. Super. Ct. Sept. 25, 2019) ("medical malpractice in Delaware requires a great deal more than notice pleading"). Those requirements run headlong into Rules 8 and 9, which already specify every element that a federal pleading must include. "[T]he Federal Rules impose comprehensive, not minimum, pleading requirements." *Klocke v. Watson*, 936 F.3d 240, 247 (5th Cir. 2019). Applying the Delaware statute in federal court "upset[s] the careful balance struck by the Federal Rules." *Pledger*, 5 F.4th at 520 (quoting *Gallivan*, 943 F.3d at 293-94).

The Delaware statute also conflicts with Federal Rule 11, which "provides that 'a pleading need not be verified or accompanied by an affidavit,' and instead treats the signature of an attorney or party as a certification that the claim is legally sufficient and likely factually supported." *Pledger*, 5 F.4th at 520 (quoting Fed. R. Civ. P. 11); *see also Albright v. Christensen*, 24 F.4th 1039, 1046 & n.3 (6th Cir. 2022) (finding Michigan's affidavit requirement "obviously conflicts" with Rule 11, "bolster[ing]" the conclusion that the state statute "does not apply in federal court"). By "specifically disclaim[ing]" the need for an expert affidavit to accompany a complaint, Rule 11 answers the

same question as the Delaware statute but with a different conclusion. *Pledger*, 5 F.4th at 520.

Importantly, it is irrelevant to the conflict analysis that the Delaware AOM is an attachment to a pleading, rather than a "pleading" itself, because Delaware courts view the affidavit as a component of a medical negligence complaint. A Delaware "[c]omplaint is statutorily deficient" when it alleges medical negligence without including an AOM. *Duross v. Connections CSP, Inc.*, 2019 WL 4391231, at *3 (Del. Super. Ct. Sept. 13, 2019) (emphasis added); *see Dambro*, 974 A.2d at 133 (explaining the statute "requires an Affidavit of Merit signed by an expert witness to be obtained before a healthcare negligence lawsuit can be filed"). "Moreover, the [AOM] statute directs that, if the required Affidavit or a motion for extension of time does not accompany the complaint, then 'the Prothonotary or clerk of the court shall refuse to file the complaint and it shall not be docketed with the court.'" *Smith v. Kobasa*, 113 A.3d 1081, 2015 WL 1903546, at *2 (Del. 2015) (quoting 18 Del. C. § 6853(a)(1) (emphasis added)). Plainly, the complaint and affidavit together form a unitary submission required to "commence[]" a medical negligence action. Fed. R. Civ. P. 3.

Furthermore, "[t]he Supreme Court rejected precisely this kind of hair-splitting in *Shady Grove*." *Pledger*, 5 F.4th at 522 (finding it irrelevant that the West Virginia certificate must be served before filing suit instead of with the complaint itself). *Shady Grove* demonstrated that the "step-one inquiry is a functional one" when it "considered whether Federal Rule 23's 'one-size-fits-all' criteria for the maintenance of class actions left room for the operation of a state law that would impose additional requirements." *Id.* (citing *Shady Grove*, 559 U.S. at 398-99). The Supreme Court "had no difficulty rejecting the state's proposed distinction between its rule, which purportedly addressed the 'antecedent question' of class-action eligibility, and Rule 23, which the state viewed as addressing only class-action certification: '[T]he line between eligibility and certifiability is entirely artificial.'" *Id.* (quoting *Shady Grove*, 559 U.S. at 399). "So too, here." *Id.* Any purported distinction between attaching the affidavit to the complaint and incorporating it directly in the same filing "is equally artificial; either way, [Delaware's affidavit] requirement amounts to a 'precondition[ ] for maintaining' a medical malpractice suit." *Id.*

Because the Delaware AOM statute "attempts to answer the same question" as Rules 8, 9, and 11, "it cannot apply in diversity suits unless [those rules] are ultra vires." *Shady Grove*, 559 U.S. at 399. They are not. The

Federal Rules are "presumptively valid[] under both the constitutional and statutory constraints." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1987). "There is, of course, no contention that Federal Rules 8 and 9 are beyond the scope of the Rules Enabling Act or inconsistent with the Constitution," *Chamberlain*, 210 F.3d at 160, nor is there "reason to doubt the validity" of Rule 11, *Pledger*, 5 F.4th at 521 (citing *Gallivan*, 943 F.3d at 294). "[T]he Supreme Court has '[s]o far … rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act.'" *Id.* (quoting *Abbas*, 783 F.3d at 1336); *see Shady Grove*, 559 U.S. at 407; *Martin*, 34 F.4th at 1132. Rules 8, 9, and 11 accordingly bar application of the Delaware AOM statute in federal court. *See Pledger*, 5 F.4th at 521; *Gallivan*, 943 F.3d at 294.

### 2. The Delaware Statute Conflicts with Federal Rules and Principles Governing Dismissal of Complaints

The Delaware statute also conflicts with Federal Rule 12, which "seeks to answer: what defects in a complaint mandate dismissal." *Pledger*, 5 F.4th at 520. Under the Federal Rules, "[t]o withstand a Rule 12(b)(6) 'motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 299-300 (3d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Rule 12 does not demand

'evidentiary support'—in an affidavit or any other form—for a claim to be plausible." *Gallivan*, 943 F.3d at 293 (quoting *Klocke*, 936 F.3d at 246). A well-pleaded complaint may proceed even if "actual proof of [the] facts alleged is improbable and … a recovery is very remote and unlikely." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (quoting *Twombly*, 550 U.S. at 556). At the motion to dismiss stage, courts "are looking only for plausible claims, not proof of wrongs." *U.S. ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 174 (3d Cir. 2019).

The Delaware AOM statute, however, demands that the plaintiff provide evidentiary support for medical negligence claims just to "get through the courthouse doors." *Mammarella*, 93 A.3d at 637; *see Dambro*, 974 A.2d at 126 (noting the AOM's required contents); *see Dougherty v. Horizon House, Inc.*, 2008 WL 3488532, at *3 (Del. Super. Ct. June 25, 2008) (describing the affidavit as "a preliminary hurdle intended for the early stages of a medical negligence lawsuit"). The affidavit statute answers the same question as Rule 12 because it "imposes additional procedural requirements not found in the federal rules … for a case to proceed at the same stage of litigation." *Klocke*, 936 F.3d at 245; *see also Abbas*, 783 F.3d at 1334 (explaining Rule 12 provides the "exclusive criteria for testing the legal and factual sufficiency of a claim in

federal court" before summary judgment (citation omitted)); *accord Carbone*, 910 F.3d at 1350-52 (Rules 8 and 12 "create an affirmative entitlement to avoid pretrial dismissal" before summary judgment).

A state rule that "set[s] up an additional hurdle a plaintiff must jump over" to move beyond the pleading stage "conflicts with the Federal Rules" and therefore cannot apply in federal court unless the Federal Rules violate the Rules Enabling Act. *Abbas*, 783 F.3d at 1334, 1336; *see also Pledger*, 5 F.4th at 520. There is again no argument that Rule 12 is invalid. *See Abbas*, 783 F.3d at 1337 (citing *Shady Grove*, 559 U.S. at 404); *Gallivan*, 943 F.3d at 294. Because the Delaware AOM statute attempts to answer the same question as Rule 12, it does not apply in federal court. The Court should accordingly reverse the dismissal of Mr. Berk's complaint.

**B.    Existing Authority Addressing Pennsylvania and New Jersey Law Does Not Apply to the Delaware Statute**

The Delaware AOM statute does not apply in federal court even under the pre-*Shady Grove* analysis this Court used in its cases examining Pennsylvania and New Jersey law. *See supra*, Statement of the Case, section A.4. Unlike the New Jersey and Pennsylvania filings, there is no "temporal separation" between the Delaware AOM and the complaint, which is the factor the Court's prior decisions were "premised on." *Nuveen*, 692 F.3d at 303.

Instead, the Delaware AOM is a "filing requirement[]," without which the court "will not entertain the case." *Dishmon*, 32 A.3d at 342, 344-45. In addition, the AOM statute impacts the content and specificity of the pleadings and mandates dismissal of complaints that could otherwise proceed under the Federal Rules. *Cf. Liggon-Redding*, 659 F.3d at 262-63. The AOM statute thus imposes a "pleading requirement" that directly collides with the Federal Rules and is therefore preempted. *Nuveen*, 692 F.3d at 303. The District Court's contrary holding was erroneous.

### 1. The Delaware Statute Creates a Pleading Requirement

As detailed *supra*, Statement of the Case, section A.1, the Delaware AOM is a mandatory requirement for initiating a medical negligence lawsuit. 18 Del. C. § 6853(a). The affidavit "must be filed together with the complaint," *Beckett*, 897 A.2d at 756, and a "[c]omplaint is statutorily deficient" when it alleges medical negligence without including an AOM, *Duross*, 2019 WL 4391231, at *3. The court may grant a single 60-day extension for good cause, but the extension motion must accompany the complaint in place of the affidavit, *Kobasa*, 2015 WL 1903546, at *2, and courts will dismiss the complaint if the extension period expires before an affidavit is lodged, *Enhaili v. Patterson*, 197 A.3d 491, 2018 WL 5877282, at *1 (Del. 2018).

The AOM statute further requires that the affidavit include specific content to bolster and contextualize the allegations in the complaint. To satisfy the statute, "expert medical testimony [must] be presented to *allege* a deviation from the applicable standard of care." *Beckett*, 897 A.2d at 757 (emphasis added) (citation omitted). The affidavit may "track[] the statutory language," *Dishmon*, 32 A.3d at 342-43, but Delaware courts rigorously enforce compliance with the required elements, *see, e.g.*, *Palacio ex rel. Mitchell v. Premier Healthcare, Inc.*, 2015 WL 13697664, at *1 (Del. Super. Ct. Aug. 11, 2015) (rejecting an affidavit that failed to expressly state whether the alleged negligence was the proximate cause of the plaintiff's injuries). In short, the AOM statute requires the plaintiff to augment the complaint with a filing that particularizes the claims and "allege[s]" facts to demonstrates their merit. *Beckett*, 897 A.2d at 757. By any measure, the AOM statute imposes a pleading requirement for medical negligence cases.

### 2. This Court's Pennsylvania and New Jersey's Precedents Do Not Control This Case

In contrast to the Delaware statute, the Pennsylvania and New Jersey malpractice provisions do *not* impose pleading requirements, as this Court has held and reaffirmed in the *Chamberlain*, *Liggon-Redding*, *Nuveen*, and

*Schmigel* cases. *See supra*, Statement of the Case, section A.4. As a result, those decisions do not control here.[5]

Start with the New Jersey statute, N.J. Stat. Ann. §§ 2A:53A-26 *et seq.*, which "requires the timely filing of an affidavit of merit attesting to the viability of claims in certain actions against professionals." *Nuveen*, 692 F.3d at 287. This Court held in *Chamberlain* and reiterated in *Nuveen* that the New Jersey affidavit "is not part of the complaint, nor does it need to be filed with the complaint," but instead "must be filed within 60, or possibly 120 days, after the defendant files its answer." *Id.* at 303 (citing N.J. Stat. Ann. § 2A:53A-27); *see also Chamberlain*, 210 F.3d at 160 ("The required affidavit … is not filed until after the pleadings are closed"). Notably, that time period must elapse before a complaint lacking an affidavit can be dismissed. *Schmigel*, 800 F.3d at 120; *see Chamberlain*, 210 F.3d at 157 (the statute "requires that the plaintiff file an affidavit of a licensed physician within 60 days of the date the answer is filed or face dismissal of the complaint").

---

[5] Nor do the handful of unpublished decisions of this Court that did not analyze choice-of-law issues in affirming dismissal of Delaware medical negligence complaints that lacked affidavits. *See Fletcher v. Dep't of Corr.*, 856 F. App'x 359 (3d Cir. 2021); *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400 (3d Cir. 2011); *Hartman v. Corr. Med. Servs.*, 366 F. App'x 453 (3d Cir. 2010); *Myers v. Med. Ctr. of Del., Inc.*, 105 F. App'x 403 (3d Cir. 2004).

After examining these features of the New Jersey statute, *Chamberlain* found "no direct conflict" with Federal Rule 8. 210 F.3d at 160. As *Nuveen* later explained, that conclusion "was premised on the temporal separation of the filing of the complaint and the affidavit." *Nuveen*, 692 F.3d at 303 (citing *Chamberlain*, 210 F.3d at 160). In short, the New Jersey statute "does not collide" with Rule 8 because the temporal separation means the affidavit "has no effect on what is included in the pleadings of a case or the specificity thereof." *Id.* (quoting *Chamberlain*, 210 F.3d at 160). Other elements of the statutory regime confirmed that conclusion, including that the affidavit "does not contain a statement of the factual basis for the claim," and that "failure to file the required affidavit … does not render pleadings insufficient." *Id.* (citing *Chamberlain*, 210 F.3d at 160).

Pennsylvania's certificate of merit (COM) rules operate similarly. As this Court explained in the *Liggon-Redding* case, the main provision, Rule 1042.3, "requires a certificate of merit to be filed within 60 days after filing a professional negligence claim." 659 F.3d at 262. Accordingly, "like its New Jersey counterpart," the Pennsylvania COM "need not be filed until well after the complaint." *Id.* at 263; *see also Wilson v. United States*, 79 F.4th 312, 318 (3d Cir. 2023) (describing Rule 1042.3 as a "post-pleading barrier to entry" for

malpractice claims). While that period runs, the defendant must wait to move for dismissal; the passage of the sixty days is "a condition precedent" for disposing of a complaint. *Schmigel*, 800 F.3d at 120. Consequently, the COM requirement is "not 'self-enforcing'" and is instead waivable. *Liggon-Redding*, 659 F.3d at 260 n.2 (quoting *Moore v. John A. Luchsinger, P.C.*, 862 A.2d 631, 632-33 (Pa. Super. Ct. 2004)). "[U]nder Pennsylvania law, a plaintiff may file an untimely certificate of merit as long as she does so before the defendant files a praecipe for non pros," a state analogue to a motion for dismissal without prejudice. *Id.*

Following the lead of its decision in *Chamberlain*, this Court held in *Liggon-Redding* that the Pennsylvania COM regime "did not conflict with any Federal Rule," including Rules 8 and 9. *Schmigel*, 800 F.3d at 120 (discussing *Liggon-Redding*). As in *Chamberlain* and *Nuveen*, what mattered most was the temporal separation between the complaint and the COM, which meant that Rule 1042.3 "does not govern the content of pleadings or the level of specificity contained therein." *Id.* at 263; *see also id.* at 262 ("Pennsylvania Rule 1042.3 does not require a plaintiff to set forth any factual averments upon which a claim is based"). *Schmigel* reaffirmed and extended that holding to Rule 1042.7, a provision enacted after *Liggon-Redding* that sets out conditions

narrowing defendants' rights to dismissal of a complaint lacking a COM. 800 F.3d at 118, 121-24.

Along nearly every relevant dimension, the Delaware AOM statute differs from the New Jersey and Pennsylvania regimes the Court examined in *Chamberlain*, *Nuveen*, *Liggon-Redding*, and *Schmigel*. Most importantly, there is no "temporal separation" between the complaint and affidavit in Delaware; the affidavit must be filed "together with [the] complaint," *Beckett*, 897 A.2d at 756, and the complaint is "statutorily deficient" if it lacks an AOM, *Duross*, 2019 WL 4391231, at *3. In addition, the affidavit must contain a statement of the factual basis for the claim: expert testimony "alleg[ing]" that there are reasonable grounds to believe the defendant breached the standard of care, *Beckett*, 897 A.2d at 757, and that the breach was the proximate cause of the injuries, *Dambro*, 974 A.2d at 126. Further, the AOM requirement is not a waivable right to dismissal granted to the defendant. Not only does the defendant not even play a necessary role in dismissal when an AOM is absent; the statute bars the court itself from filing and docketing a complaint without an AOM or extension motion. *Kobasa*, 2015 WL 1903546, at *2.

For these reasons, the Delaware AOM requirement is materially distinct from the Pennsylvania and New Jersey schemes the Court has

examined in the past. Unlike those regimes, the Delaware AOM statute presents a "direct conflict" with Federal Rules 8 and 9. *Schmigel*, 800 F.3d at 119. Accordingly, "federal court[s] must apply the federal rule and reject the state rule." *Liggon-Redding*, 659 F.3d at 262. If this Court does not join the growing consensus that state affidavit of merit rules do not apply in federal court, it should reverse the dismissal of the complaint on these grounds.

## II. If the Court's Existing Precedent Applies to the Delaware Statute, Those Cases Should be Overruled

If the Court finds that its Pennsylvania and New Jersey precedents apply and require affirmance here, the Court should take this opportunity to answer the questions it posed in the supplemental briefing order in the *Wilson* case, *see supra* at 20 (citing Clerk's Letter to Counsel, *Wilson v. United States*, No. 22-1940 (3d Cir. June 7, 2023), Doc. 45)), and find that the conflicts analyses in *Chamberlain*, *Liggon-Redding*, *Nuveen*, and *Schmigel* were inconsistent with *Shady Grove*. As the Court referenced in the *Wilson* letter, "[a] panel of this Court [may] decline to follow a prior decision of [the] Court without the necessity of an en banc decision [regardless] whether the conflicting Supreme Court decision was rendered before or after [the] prior decision." *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009); *see also Karns v. Shanahan*, 879 F.3d 504, 514-15 (3d Cir. 2018). This case presents

an ideal occasion for the Court to revisit and set aside its precedents that evaluated conflicts between state and federal rules under a pre-*Shady Grove* framework. The Court should now join the "growing consensus" of courts that have implemented *Shady Grove*'s guidance and correctly rejected application of state affidavit of merit requirements in federal court. *Pledger*, 5 F.4th at 518; *see Martin*, 34 F.4th at 1129.

As described *supra*, Statement of the Case, section A.4, this Court's *Erie* jurisprudence has not fully incorporated *Shady Grove*'s revision to conflicts analysis. The *Liggon-Redding* case, issued the year after *Shady Grove*, relied solely on *Chamberlain* in looking for a "direct collision" between the Pennsylvania COM regime and the Federal Rules and concluded that the state law "can co-exist with the Federal Rules" because each "controls its own intended area of influence." 659 F.3d at 262-63; *cf. Chamberlain*, 210 F.3d at 159-60 (finding the New Jersey affidavit statute does not "directly collide[]" with the Federal Rules because the state provision's underlying "policy can be effectuated without compromising any of the policy choices reflected in Federal Rules 8 and 9"). *Chamberlain* of course preceded *Shady Grove* by a decade, but *Liggon-Redding* should have recognized that *Chamberlain*'s approach "ha[d] been abrogated by intervening Supreme Court precedent."

*United States v. Stevens*, 70 F.4th 653, 655 (3d Cir. 2023); *see Karns*, 879 F.3d at 514 ("a panel may revisit a prior holding of the Court which conflicts with intervening Supreme Court precedent" (citation omitted)).

The same is true for the *Schmigel* case, which erroneously relied on *Liggon-Redding* and *Chamberlain* to conclude that another feature of the Pennsylvania COM scheme "can exist side by side" with Federal Rule 12. 800 F.3d at 121-24; *but see id.* at 125-28 (Rendell, J., dissenting) (arguing the panel majority "ignore[d]" *Shady Grove* and reached a "holding [that] runs afoul of Supreme Court precedent"). In contrast to the Pennsylvania cases, the *Nuveen* case did cite *Shady Grove* in examining the New Jersey statute. Nonetheless, its analysis remained grounded in *Chamberlain* and *Liggon-Redding*, looking to respective policy purposes for a "'direct conflict' between Federal Rules 8 and 9 and the AOM Statute" instead of asking whether the federal and state rules answer the same question. *Nuveen*, 692 F.3d at 303 (quoting *Chamberlain*, 210 F.3d at 160). *Nuveen*'s reference to *Shady Grove* addressed only the plurality's discussion of the second step of the framework, which created no binding law. 692 F.3d at 303; *see Abbas*, 783 F.3d at 1336-37.

This Court has long recognized that it "should not countenance the continued application in this circuit of a rule, even of [the Court's] own

devising, which is patently inconsistent with the Supreme Court's pronouncements." *Tann*, 577 F.3d at 541 (quoting *Cox v. Dravo Corp.*, 517 F.2d 620, 627 (3d Cir. 1975)). A panel's "first duty is to follow the dictates of the United States Supreme Court," *Tann*, 577 F.3d at 541 (citation omitted), and the Court is accordingly "compelled to apply the law announced by the Supreme Court as [this Court] find[s] it on the date of [its] decision," *Karns*, 879 F.3d at 514-15 (quoting *Tann*, 577 F.3d at 541). Any contrary precedents "must give way" if they are "in conflict with Supreme Court precedent." *Stevens*, 70 F.4th at 660 (quoting *Karns*, 879 F.3d at 515); *cf. United States v. Henderson*, 64 F.4th 111, 118 (3d Cir. 2023) ("a panel [may] overrule its Circuit's case law … when the decision conflicts with later Supreme Court decisions and subsequent case law applying those decisions"). The Court should apply these principles and hold that *Chamberlain*, *Liggon-Redding*, *Nuveen*, and *Schmigel* conflict with *Shady Grove* and that their choice-of-law analyses have accordingly been abrogated.

"Further reinforcing this conclusion, every other Court of Appeals to have squarely considered this issue has concluded" that *Shady Grove* precludes applying affidavit of merit requirements in federal court. *Stevens*, 70 F.4th at 660. As discussed *supra*, Statement of the Case, section A.3, the

Second, Fourth, and Sixth Circuits have each applied *Shady Grove* and held that the Federal Rules displace state affidavit of merit rules. *See Corley*, 11 F.4th at 88-89; *Pledger*, 5 F.4th at 518 (noting the "growing consensus" on this issue); *Gallivan*, 943 F.3d at 293-94; *see also Albright*, 24 F.4th at 1045-46; *Young*, 942 F.3d at 351 (rejecting application of Illinois's affidavit requirement at the pleading stage). The Ninth Circuit applied the same test and reached the same result as to Washington's declaration requirement for malpractice cases. *Martin*, 34 F.4th at 1129-30. In addition, the Fifth, Eleventh, and D.C. Circuits have applied *Shady Grove* to bar application of other state rules governing pleadings and pretrial dismissals. *See Klocke*, 936 F.3d at 245-46; *Carbone*, 910 F.3d at 1357; *Abbas*, 783 F.3d at 1336-37.

Finally, this Court's recent decision in *Wilson v. United States*, 79 F.4th 312 (3d Cir. 2023), does not mitigate the need for the Court to correct its earlier precedents. *Wilson* held that Pennsylvania's COM requirement does not apply in Federal Tort Claims Act cases because it is "not a rule of tort liability incorporated by the FTCA." *Id.* at 319. The Court acknowledged its seemingly contrary rulings in *Chamberlain*, *Liggon-Redding*, *Nuveen*, and *Schmigel*, but distinguished incorporation in FTCA cases from choice of law in diversity and "related to" bankruptcy cases, reasoning that the *Erie* inquiry

involves different considerations from FTCA analysis and can thus produce contrary results. *Id.* at 319 & n.5. But *Wilson* did not cite *Shady Grove*, nor address the prior decisions' failure to implement *Shady Grove*'s refined choice-of-law analysis. The erroneous foundation on which the prior cases are based thus remains undisturbed.

If the Court finds that *Chamberlain*, *Liggon-Redding*, *Nuveen*, and *Schmigel* control here, it should set them aside and take the opportunity that this case presents to embrace the approach to choice of law that *Shady Grove* demands. The Court should then hold that the Delaware AOM statute is displaced by the Federal Rules, conclude that Mr. Berk does not need an affidavit of merit for his case to proceed in the District Court, and reverse and remand accordingly.

## CONCLUSION

The Court should reverse and remand.

Date: October 4, 2023

Respectfully submitted,

*s/ Samuel I. Ferenc*

R. Stanton Jones
Andrew T. Tutt
Samuel I. Ferenc
Minjae Kim
Katie Weng
ARNOLD & PORTER KAYE
   SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
Fax: (202) 942-5999

*Counsel for Plaintiff-Appellant*
*Harold R. Berk*

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of this Court.

Dated: October 4, 2023

*s/ Samuel I. Ferenc*
Samuel I. Ferenc

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2023, I electronically filed the foregoing document and accompanying materials with the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: October 4, 2023          *s/ Samuel I. Ferenc*
                                Samuel I. Ferenc

## CERTIFICATE OF COMPLIANCE

1.      The foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) because the brief contains 12,412 words.

2.      The brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Century 14-point font.

3.      In accordance with Third Circuit Local Appellate Rule 31.1(c), the text of Appellant's Brief, as electronically filed on October 4, 2023, is identical to the text of the Brief to be submitted in paper copy.

4.      In accordance with Third Circuit Local Appellate Rule 31.1(c), Appellant's Brief, as electronically filed on October 4, 2023, was scanned with a virus detection program, namely Microsoft Defender (Version 1.399.35.0), and no virus was detected.


Dated: October 4, 2023          *s/ Samuel I. Ferenc*
                                Samuel I. Ferenc

# In the United States Court of Appeals for the Third Circuit

HAROLD R. BERK,
*Plaintiff-Appellant,*

*v.*

WILSON C. CHOY, MD, ET AL.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Delaware
No. 1:22-cv-01506-RGA (Hon. Richard G. Andrews)

## JOINT APPENDIX: VOLUME I OF II (JA1-JA7)

R. Stanton Jones
Andrew T. Tutt
Samuel I. Ferenc
Minjae Kim
Katie Weng
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
sam.ferenc@arnoldporter.com

*Counsel for Plaintiff-Appellant Harold R. Berk*

# TABLE OF CONTENTS

**Volume I of II (Bound with Appellant's Opening Brief)**

1.  Notice of Appeal,
    Dkt. 75 (Apr. 4, 2023) ................................................................ JA1

2.  Order Dismissing Case,
    Dkt. 74 (Apr. 4, 2023) ................................................................ JA3

3.  Order to Show Cause,
    Dkt. 64 (Mar. 9, 2023) ............................................................... JA4

4.  Memorandum,
    Dkt. 73 (Apr. 4, 2023) ................................................................ JA5

**Volume II of II**

5.  District Court Docket Sheet ...................................................... JA8

6.  Complaint,
    Dkt. 1 (Nov. 18, 2022) .............................................................. JA19

7.  Motion to Extend Time for Filing Medical Expert Opinion,
    Dkt. 6 (Nov. 18, 2022) .............................................................. JA35

8.  Memorandum in Support of Plaintiff's Motion for Extension of Time to
    File Affidavit of Merit, Dkt. 7 (Nov. 23, 2022) ...................... JA38

9.  Order,
    Dkt. 9 (Nov. 23, 2022) .............................................................. JA40

10. Answer of Defendant Wilson C. Choy, M.D.,
    Dkt. 18 (Jan. 12, 2023) ............................................................. JA41

11. Answer of Defendant Beebe Medical Center, Inc.,
    Dkt. 20 (Jan. 12, 2023) ............................................................. JA58

12. Letter,
    Dkt. 22 (Jan. 19, 2023) ............................................................. JA72

13. Notice of Documents Filed Under Seal,
    Dkt. 25 (Jan. 19, 2023) ............................................................. JA73

14. Defendant Encompass Health Rehabilitation Hospital of Middletown,
    LLC Answer, Dkt. 27 (Jan. 20, 2023) ...................................... JA75

15. Defendant Beebe Medical Center, Inc. Motion for *In Camera* Review of Affidavit of Merit, Dkt. 32 (Jan. 24, 2023).........................................JA89

16. Defendant Wilson C. Choy, M.D. Motion for *In Camera* Review of Affidavit of Merit, Dkt. 33 (Jan. 24, 2023)...............................JA96

17. Defendant Encompass Health Rehabilitation Hospital of Middletown, LLC Motion for *In Camera* Review of Affidavit of Merit, Dkt. 34 (Jan. 24, 2023)...............................................JA99

18. Plaintiff's Memorandum of Law in Opposition to Motions for *In Camera* Review of Affidavit of Merit, Dkt. 37 (Jan. 29, 2023)...............................................JA102

19. Amended Complaint, Dkt. 38 (Jan. 30, 2023)...............................................JA122

20. Reply Brief in Support of Motion of Defendant Wilson C. Choy, M.D. for *In Camera Review* of Affidavit of Merit, Dkt. 39 (Feb. 6, 2023) ...............................................JA143

21. Reply Brief in Support of Motion of Defendant Beebe Medical Center, Inc. Motion for *In Camera Review* of Affidavit of Merit, Dkt. 41 (Feb. 6, 2023) ...............................................JA147

22. Defendant Encompass Health Rehabilitation Hospital of Middletown, LLC Motion to Dismiss Amended Complaint, Dkt. 44 (Feb. 13, 2023)...............................................JA159

23. Defendant Beebe Medical Center, Inc. Motion to Dismiss Amended Complaint, Dkt. 46 (Feb. 13, 2023) ...............................................JA165

24. Defendant Beebe Medical Center, Inc. Memorandum in Support of Motion to Dismiss Amended Complaint, Dkt. 47 (Feb. 13, 2023)...............................................JA168

25. Defendant Wilson C. Choy, M.D. Notice of Joinder to Motions to Dismiss, Dkt. 48 (Feb. 13, 2023)...............................................JA181

26. Plaintiff Motion to Withdraw Fourth, Fifth, and Six Causes of Action from Amended Complaint, Dkt. 53 (Feb. 24, 2023)...............................................JA183

27. Order, Dkt. 82 (Apr. 11, 2023) ...............................................JA186

28.   Amended Complaint and Exhibits A-G,
      *Berk v. Rothman Inst. Orthopedic Found.*, No. 2:23-cv-01437-JFM
      (E.D. Pa. July 12, 2023),
      Dkts. 21, 21-1, 21-2, 21-3, 21-4, 21-5, 21-6, 21-7....................................JA187

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE


HAROLD R. BERK,         :

       Plaintiff,       :   CIVIL ACTION NO.  22-cv-1506-RGA

                    :

vs.                :

                    :   JURY TRIAL DEMANDED

WILSON C. CHOY, M.D. ;   :

BEEBE MEDICAL CENTER, INC;  :

ENCOMPASS HEALTH     :

 REHABILITATION HOSPITAL  :

OF MIDDLETOWN, LLC;    :

       Defendants     :

### NOTICE OF APPEAL

Plaintiff Harold R. Berk, Pro Se, hereby appeals to the United States Court

of Appeals for the Third Circuit from the Memorandum and Order of April 4, 2023

Dismissing the Case being a final judgment of Dismissal.

*Harold R. Berk*

_____

Harold R. Berk, Plaintiff, Pro Se
17000 SW Ambrose Way
Port St. Lucie, Florida 34986
215-896-2882
haroldberk@gmail.com

**CERTIFICATE OF SERVICE**

Harold R. Berk, Plaintiff Pro Se, hereby certifies that he caused a copy of the foregoing Notice of Appeal to be served upon the Court and counsel for all defendants by means of the Court's CM/ECF System this April 4, 2023.

*Harold R. Berk*
_____
Harold R. Berk, Plaintiff, Pro Se

**JA2**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HAROLD R. BERK,                          :
                                         :
                    Plaintiff,           :
                                         :
        v.                               :        Civil Action No. 22-1506-RGA
                                         :
WILSON C. CHOY, M.D., et al.,            :
                                         :
                    Defendants.          :

ORDER DISMISSING CASE

For the reasons stated in the accompanying Memorandum, upon review of Defendants'

motions for in camera review of affidavit of merit (D.I. 32, 33, 34), I have determined Plaintiff

has not complied with Delaware's affidavit of merit statute.[1]  Plaintiff's three medical negligence

counts are **DISMISSED** without prejudice.  Plaintiff's motion to withdraw fourth, fifth, and

sixth causes of action (D.I. 53) is **GRANTED**.  The other pending motions (D.I. 44, 46, 50, 72)

are **DISMISSED** as moot.  As all claims have been dismissed or withdrawn, the Clerk of Court

is directed to **CLOSE** the case.

IT IS SO ORDERED this 4th day of April 2023.

United States District Judge

_____

[1] I **GRANT** Plaintiff's motion for leave to file a sur-reply.  (D.I. 42).

**JA3**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HAROLD R. BERK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 22-1506-RGA |
| | : | |
| WILSON C. CHOY, M.D., et al., | : | |
| | : | |
| Defendants. | : | |

ORDER TO SHOW CAUSE

The recent flurry of activity in this case led to me reviewing the docket and noticing the

motions for in camera review of affidavit of merit (D.I. 32, 33, 34) filed by three defendants.

Upon cursory review of the two sealed filings (D.I. 23, 26), I do not see anything that looks like

an affidavit, let alone an affidavit of merit.  The latter filing consists of internet printouts about

two doctors.  The former filing consists of Plaintiff's medical records.

It is possible I am overlooking something.  Therefore, Plaintiff is ORDERED TO SHOW

CAUSE within one week as to whether there are one or more "affidavits of merit" compliant

with Delaware statute, and if so, tell me precisely where I might find them.  Otherwise, I will

need to dismiss the case.

IT IS SO ORDERED this  9th day of March 2023.


  /s/ Richard G. Andrews
United States District Judge

**JA4**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HAROLD R. BERK,                    :
                                   :
            Plaintiff,             :
                                   :
      v.                           :      Civil Action No. 22-1506-RGA
                                   :
WILSON C. CHOY, M.D., et al.,      :
                                   :
            Defendants.            :

MEMORANDUM

      This is a medical malpractice case.  (D.I. 1, ¶ 5).  The original complaint alleged medical

negligence against three defendants, each claim being in a separate count.  Jurisdiction is based

on diversity of citizenship.  Defendants, a doctor and two hospitals, filed motions for in camera

review of the "affidavit of merit" to determine whether Plaintiff had complied with the Delaware

affidavit of merit statute.  (D.I. 32, 33, 34).  Upon cursory review of the two sealed filings (D.I.

23, 26), I did not see anything that looks like an affidavit, let alone an affidavit of merit.  I issued

an order to show cause to give Plaintiff an opportunity to direct me to any affidavits of merit.

(D.I. 64).  The deadline passed without any relevant response.

      The legal issue is whether a federal court sitting in diversity is bound to apply the

affidavit of merit statute as state substantive law.  In the earlier briefing on the motions, Plaintiff

essentially conceded that the Court of Appeals has ruled on essentially the same issue in the

context of the Pennsylvania "certificate of merit" statute.  *See Liggon-Redding v. Estate of*

*Robert Sugarman*, 659 F.3d 258, 259-65 (3d Cir. 2011) (legal malpractice).  The Third Circuit

has also ruled on the same issue in the context of the New Jersey "affidavit of merit" statute.  *See*

**JA5**

*Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*,

692 F.3d 283, 302-04 (3d Cir. 2012) (accounting malpractice; legal malpractice); *Chamberlain v.*

*Giampapa*, 210 F.3d 154, 156-61 (3d Cir. 2000) (medical malpractice).

The Delaware statute, 18 Del. C. § 6853, is essentially the same as its Pennsylvania and

New Jersey counterparts.  It states in relevant part:

> No health-care negligence lawsuit shall be filed in this State unless the complaint is
> accompanied by:
>
>> An affidavit of merit as to each defendant signed by an expert witness, as defined in §
>> 6854 of this title, and accompanied by a current curriculum vitae of the witness, stating
>> that there are reasonable grounds to believe that there has been health-care medical
>> negligence committed by each defendant. . . . The affidavit or affidavits of merit shall set
>> forth the expert's opinion that there are reasonable grounds to believe that the applicable
>> standard of care was breached by the named defendant or defendants and that the breach
>> was a proximate cause of injury or injuries claimed in the complaint. An expert signing an
>> affidavit of merit shall be licensed to practice medicine as of the date of the affidavit; and
>> in the 3 years immediately preceding the alleged negligent act has been engaged in the
>> treatment of patients and/or in the teaching/academic side of medicine in the same or
>> similar field of medicine as the defendant or defendants, and the expert shall be Board
>> certified in the same or similar field of medicine if the defendant or defendants is Board
>> certified.

18 Del. C. § 6853 (a)(1) & (c).  Thus, the affidavit of merit at a minimum must be signed, sworn,

and express relevant opinions about culpability.

Plaintiff's argument is that other circuits have ruled differently, and he predicts the Third

Circuit will now hold that the affidavit of merit statutes are state procedural law, not state

substantive law.  In effect, Plaintiff argues that the Third Circuit will overrule its decisions in

*Nuveen* and the earlier cases.  I do not think that is likely, and, in any event, I cannot overrule

Third Circuit cases.  The Delaware statute is substantive law, and I need to apply it.  Thus, I

reject Plaintiff's main argument.

Plaintiff, in the alternative, states that he has complied with the affidavit of merit

requirements by filing internet printouts about two doctors and some of Plaintiff's medical

records. (D.I. 37 at 18). Plaintiff does not point to any signed and sworn opinions about culpability authored by his two named experts. Indeed, there is nothing to indicate that the two doctors even know that he has submitted them as experts in this case.

In the middle of the briefing on the motions for in camera review, Plaintiff filed an amended complaint. (D.I. 38). It added counts for assault and battery against two Defendants, and failure to train against the third Defendant. Plaintiff subsequently moved to withdraw the three additional counts. (D.I. 53). I do not see that the motion is opposed. I therefore will grant it.

I will enter a separate order dismissing Plaintiff's three medical negligence counts without prejudice.

Entered this 4th day of April 2023.

United States District Judge