# In the United States Court of Appeals for the Third Circuit

HAROLD R. BERK
*Plaintiff-Appellant*

v.

WILSON C. CHOY, M.D.
BEEBE MEDICAL CENTER, INC., and
ENCOMPASS HEALTH REHABILITATION
HOSPITAL OF MIDDLETOWN, LLC,
*Defendants-Appellees*

On Appeal from the United States District Court for the District of Delaware
No. 1:22-cv-01506-RGA (Hon. Richard G. Andrews)

## APPELLEE ENCOMPASS HEALTH REHABILITATION HOSPITAL OF MIDDLETOWN, LLC'S ANSWERING BRIEF

Colleen D. Shields
Jessica L. Reno
Paul S. Seward
ECKERT SEAMANS CHERIN & MELLOTT, LLC
222 Delaware Avenue, Suite 700
Wilmington, DE 19801
(302) 574-7400
cshields@eckertseamans.com
jreno@eckertseamans.com
pseward@eckertseamans.com
*Counsel for Appellee Encompass Health Rehabilitation Hospital of Middletown, LLC*

## CORPORATE DISCLOSURE STATEMENT

Encompass Health Rehabilitation Hospital of Middletown, LLC hereby discloses the following pursuant to Rule 7.1 of the Federal Rules of Civil Procedure:

1. Encompass Health Rehabilitation Hospital of Middletown, LLC is a Delaware limited liability company.

2. Encompass Health Owned Hospitals Holdings, LLC owns 100% of Defendant-Appellee Encompass Health Rehabilitation Hospital of Middletown, LLC.

3. Encompass Health Corporation owns 100% of Encompass Health Owned Hospitals Holdings, LLC.

4. Encompass Health Corporation is a publicly held corporation.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ...........................................i

TABLE OF CONTENTS ........................................................ii

TABLE OF AUTHORITIES .....................................................iii

COUNTER-STATEMENT OF THE ISSUES .........................................1

COUNTER-STATEMENT OF THE CASE ..........................................2

    A. Factual History .....................................................2
    B. Procedural History ................................................2

RELATED CASES AND PROCEEDINGS ..........................................5

SUMMARY OF THE ARGUMENT ...............................................6

ARGUMENT

I.    The District Court Correctly Determined That a Federal Court Sitting in Diversity Is Bound to Apply Delaware's Affidavit of Merit Statute, 18 *Del. C.* § 6853, as State Substantive Law ..................................8

    A. This Court's Framework for Resolving Choice-of-Law Issues in Diversity Cases Is Not Patently Inconsistent with *Shady Grove* ..............8

    B. Delaware's AOM Statute is Substantive Law and, Therefore, Must be Applied in Federal Court Pursuant to this Court's Existing Precedent ..........................................................19

        1. The Delaware AOM Statute neither collides nor conflicts with F.R.C.P. 8, 9, 11, or 12......................................19

        2. The Delaware AOM Statute is outcome-determinative and failing to apply it would frustrate Erie's twin aims ...........................27

        3. The DMMA is so intertwined with Delaware's state rights and remedies that it cannot be preempted under the Rules Enabling Act ..............................................................28

II.    Plaintiff's Claims Are Time Barred ...................................34

CONCLUSION .............................................................40

CERTIFICATE OF BAR MEMBERSHIP .........................................41

CERTIFICATE OF SERVICE ................................................42

CERTIFICATE OF COMPLIANCE.............................................43

# TABLE OF AUTHORITIES

## Cases

*Albright v. Christensen,*
  24 F.4th 1039 (6th Cir. 2022) ...........................................16, 18, 19

*Anderson v. Russell,*
  2012 WL 1415911 (Del. Super. Ct. Apr. 18, 2012) ..............................31, 32

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ....................................................................15

*Bearden v. Honeywell Int'l, Inc.,*
  2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010) ........................................29

*Beckett v. Beebe Med. Ctr., Inc.,*
  897 A.2d 753 (Del. 2006) ..............................................................26

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................15

*Burlington Northern R. Co. v. Woods,*
  480 U.S. 1 (1987) ....................................................................12, 13

*Cahall v. Carey's Diesel, Inc.,*
  2018 WL 2370869 (D. Del. May 24, 2018) ..............................................35

*Chamberlain v. Giampapa,*
  210 F.3d 154 (3d Cir. 2000) .......................6, 8, 10, 13, 15, 21, 23, 27, 32, 33

*Chester ex rel. N.L.R.B. v. Grane Healthcare Co.,*
  666 F.3d 87 (3d Cir. 2011) ..........................................................10, 13

*CoreCivic, Inc. v. Candide Grp., LLC,*
  46 F.4th 1136 (9th Cir. 2022) .....................................................12, 13, 18

*Corley v. United States,*
  11 F.4th 79 (2d Cir. 2021) ..........................................................16, 17, 19

*Curry v. Mrs. Fields Gifts, Inc.*,
2023 WL 6318108 (D. Utah Sept. 28, 2023) ...............................................11

*Dambro v. Meyers*,
974 A.2d 121 (Del. 2009) ...........................................................31, 36, 37

*Davis v. Ace Hardware Corp.*,
2014 WL 688132 (D. Del. Feb. 21, 2014) .................................................29

*Davis v. Gauby*,
408 Fed.Appx. 524 (3d Cir. 2010) .................................................39

*Dishmon v. Fucci*,
32 A.3d 338 (Del. 2011) ...............................................20, 21, 25

*Enhali v. Patterson*,
197 A.3d 491 (Del. 2018) ...............................................20, 22, 27

*Erie R. Co. v. Tompkins*,
304 U.S. 64 (1938) ...............................................8, 9, 10, 15, 17, 18, 27, 33

*Fejzulai v. Sam's West, Inc.*,
205 F.Supp.3d 723 (D.S.C. 2016) .................................................12

*Fogle v. Pierson*,
435 F.3d 1252 (10th Cir. 2006) .................................................39

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) .................................................37

*Gallivan v. United States*,
943 F.3d 291 (6th Cir. 2019) ...............................................16, 17, 18, 19, 38

*Garman v. Campbell Cnty. Sch. Dist. No. 1*,
630 F.3d 977 (10th Cir. 2010) .................................................29

*Greenwald v. Caballero-Gallagher*,
2014 WL 7008959 (Del. Super. Ct. Nov. 25, 2014) ....................................24

iv

*Godin v. Schencks*,
629 F.3d 79 (1st Cir. 2010) ............................................................13, 23, 29

*Guaranty Trust Co. v. York*,
326 U.S. 99, 109 (1945) ............................................................................9

*Hanna v. Plumer*,
380 U.S. 460 (1965) ..............................................................................12, 13

*Humphreys v. DEA*,
105 F.3d 112 (3d Cir. 1996) ......................................................................16

*In re Wellbutrin XL Antitrust Litig.*,
756 F.Supp.2d 670 (E.D. Pa. 2010) ...........................................................29

*In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*,
2010 WL 2756947 (N.D. Ohio July 12, 2010) ...........................................29

*Jackson v. Danberg*,
594 F.3d 210 (3d Cir. 2010) ......................................................................28

*James River Ins. Co. v. Rapid Funding, LLC*,
658 F.3d 1207 (10th Cir. 2011) .................................................................29

*Jones v. Corr. Med. Servs., Inc.*,
845 F.Supp.2d 824 (W.D. Mich. 2012) ......................................................29

*Leonard v. Abbott Labs., Inc.*,
2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) ...............................................29

*Liggon-Redding v. Estate of Sugarman*,
659 F.3d 258 (3d Cir. 2011) ......................6, 8, 10, 13, 14, 20, 21, 22, 23, 27

*Lisk v. Lumber One Wood Preserving, LLC*,
2014 WL 66512 (N.D. Ala. Jan. 8, 2014) ..................................................29

*Marks v. United States*,
430 U.S. 188 (1977) ..................................................................................28

*Martin v. Pierce Cnty.*,
    34 F.4th 1125 (9th Cir. 2022) ....................................................16, 17, 18, 19

*McKinney v. Bayer Corp.*,
    744 F. Supp. 2d 733 (N.D. Ohio 2010) ........................................................29

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) .....................................................................................34

*Nuveen Mut. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v.*
*WithumSmith Brown, P.C.*,
    692 F.3d 283 (3d Cir. 2012) .........................................6, 8, 10, 13, 15, 21, 23

*Palacio ex rel. Mitchell v. Premier Healthcare, Inc.*,
    2015 WL 13697664 (Del. Super. Ct. Aug. 11, 2015) ...........................24, 26

*Planned Parenthood of S.E. Pa. v. Casey*,
    947 F.2d 682 (3d Cir. 1991) ..................................................................10, 13

*Pledger v. Lynch*,
    5 F.4th 511 (4th Cir. 2021) ....................................................16, 17, 18, 19, 38

*Richards v. U.S.*,
    369 U.S. 1 (1962) .........................................................................................17

*Saddler v. Nanticoke Mem'l Hosp.*,
    2012 WL 6846550 (Del. Super. Ct. Dec. 24, 2012) ....................................32

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ...............................................................................*passim*

*Schmigel v. Uchal*,
    800 F.3d 113 (3d Cir. 2015) ..........................................6, 8, 9, 10, 13, 14, 23

*Thompson v. Real Estate Mortg. Network, Inc.*,
    822 Fed.Appx. 136 (3d Cir. 2020) ...............................................................34

*Wilson v. United States*,
    79 F.4th 312 (3d Cir. 2023) ....................................................................16, 17

*Young v. United States*,
    942 F.3d 349 (7th Cir. 2019) .................................................................16, 19

**Statutes**

10 *Del. C.* § 8119 ..........................................................................................35

18 *Del. C.* §§ 6801 *et seq.* ....................................................................1, 3, 31

18 Del. C. § 6853 .................................................................................*passim*

18 *Del. C.* § 6856 ...............................................................................*passim*

28 U.S.C. § 2702 .......................................................................................28

28 U.S.C. § 1346 ..................................................................................18, 19

42 U.S.C. § 1983 .......................................................................................17

N.J. Stat. Ann. §§ 2A:53A-26 *et seq.* .......................................................8

N.J. Stat. Ann. § 2A:53A-27 ...................................................................24

N.Y. Civ. Prac. Law § 901 ......................................................................30

West Virginia Code § 55-7B-6(b) ...........................................................18

**Rules**

Del. Super. Ct. R. Civ. P. 7 ....................................................................25

F.R.C.P. 7 ................................................................................................25

F.R.C.P. 8 ........................................................................................ *passim*

F.R.C.P. 9 ........................................................................................ *passim*

F.R.C.P. 11 ...................................................................................... *passim*

F.R.C.P. 12 .......................................................................................*passim*

F.R.C.P. 23 ........................................................................................11, 30

F.R.C.P. 56 ..............................................................................................23

Pa. R. Civ. P. 1042.3 ..........................................................................8, 24

**Other Authorities**

H.B. 310, 142 Gen. Assem. Reg. Sess. (Del. 2003) ..........................37, 38

Oxford Languages Online Dictionary (2023)...........................................14

# **COUNTER-STATEMENT OF THE ISSUES**

1. Should this Court affirm the district court's dismissal of Plaintiff-Appellant Harold Berk's Complaint for failing to provide an affidavit of merit in compliance with 18 *Del. C.* § 6853?

2. Does the Rules Enabling Act prohibit displacing the Delaware Medical Malpractice Act, codified at 18 *Del. C.* §§ 6801 *et seq.*, as doing so would abridge, enlarge, or modify state-created rights and remedies?

3. Is Plaintiff-Appellant Harold Berk estopped from taking inconsistent positions with respect to the Delaware Medical Malpractice Act wherein he availed himself of the ninety-day tolling of the statute of limitations while claiming other sections of the same Act do not apply in federal court diversity actions?

## COUNTER-STATEMENT OF THE CASE

### A. Factual History

Appellee/Defendant Encompass Rehabilitation Hospital of Middletown, LLC ("Encompass"), does not dispute Plaintiff Harold Berk's ("Plaintiff") recitation of the facts to the extent they are mere allegations in the Complaint. Encompass does not admit any specific allegation but acknowledges that Plaintiff's allegations in the Complaint form the basis for his lawsuit and eventual appeal. Limited discovery was undertaken in the district court proceedings. For purposes of the instant appeal, Plaintiff's last date of treatment and discharge from Encompass on September 7, 2020, is the only relevant fact for this Court's analysis with respect to Encompass.

### B. Procedural History

On August 11, 2022, Plaintiff mailed via certified mail a Notice of Intent to Investigate his claims pursuant to 18 *Del. C.* § 6856(4) ("Notice of Intent"). The Notice of Intent was missing from the Joint Appendix, despite being included as an exhibit to the Complaint. Nevertheless, pursuant to 18 *Del. C.* § 6856(4), Plaintiff put the parties on notice that he was invoking the ninety-day tolling of the statute of limitations applicable only to Delaware medical negligence cases.

Approximately three months later, and more than two years after Plaintiff's discharge from Encompass, on November 18, 2022, Plaintiff filed the underlying lawsuit in the United States District Court for the District of Delaware, asserting

medical negligence claims against several defendants, including Encompass. JA19. In an effort to comply with the Delaware Medical Malpractice Act (the "DMMA"), codified at 18 *Del. C.* §§ 6801 *et seq.*, Plaintiff also filed a motion to extend the time by which he had to file an affidavit of merit ("AOM") pursuant to 18 *Del. C.* § 6853(a)(2). JA35. The district court granted Plaintiff's motion and provided Plaintiff until January 23, 2023, to submit an AOM. JA40. In the meantime, all defendants, including Encompass, answered the Complaint. JA41, JA58, JA75.

On January 17 and 19, 2023, Plaintiff filed, under seal, what he purported to be an AOM, thereby satisfying 18 *Del. C.* § 6853. JA73. Thereafter, on January 24, 2023, all defendants, including Encompass, filed motions for *in camera* review of Plaintiff's AOM. JA89, JA96, JA99. Five days later, on January 29, 2023, Plaintiff opposed defendants' motions, representing "[he had] filed the Affidavit of Merit, required by Del Code §6853]," but in any event an *in camera* inspection was not required, claiming for the first time that the AOM requirement conflicts with the Federal Rules of Civil Procedure. JA102-JA104. The next day, Plaintiff filed his Amended Complaint asserting additional claims against each defendant, and specifically assault and battery claims against Encompass. JA122. Defendants opposed Plaintiff's claim that federal courts do not require an AOM in support of medical negligence claims under Delaware law via reply briefs. JA14, JA143, JA147. Defendants also moved to dismiss Plaintiff's late-added amended pleading

pursuant to the applicable statute of limitations enumerated in 18 *Del. C.* § 6856. JA159, JA165, JA181. Plaintiff then moved to withdraw his own newly-added causes of action. JA183.

On March 9, 2023, Judge Richard G. Andrews issued an Order to Show Cause requiring Plaintiff to identify precisely where in the record the 18 *Del. C.* § 6853 compliant affidavits were located, otherwise, he would dismiss the case. JA4. Within hours of the Order to Show Cause, Plaintiff appealed the Order in error. JA16-JA17. Realizing his error, Plaintiff terminated his appeal approximately two weeks later. JA17. Because Plaintiff failed to direct Judge Andrews' attention to where the alleged AOM was located in the records he submitted to the court, Judge Andrews dismissed the Complaint in its entirety. JA3, JA5. This appeal followed. JA1.

# **RELATED CASES AND PROCEEDINGS**

None.

## SUMMARY OF THE ARGUMENT

1.     The district court properly dismissed Plaintiff's Complaint for failing to produce an AOM in compliance with 18 *Del. C.* § 6853.  For all intents and purposes, Plaintiff intended to (and asserted to the district court that he did, in fact) comply with 18 *Del. C.* § 6853, but he did not.  Now, Plaintiff requests that this Court overturn decades of related precedent to rectify his lack of compliance.  Plaintiff argues this Court misapprehended and has been misapplying the U.S. Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.* since its publication in 2010.  559 U.S. 393 (2010).  However, *Shady Grove* did not alter the framework for resolving conflicts between federal rules and state laws.  Thus, there is no need for this Court to revisit and overturn its precedent.

2.     Not only are the decisions of this Court, including *Schmigel v. Uchal*, 800 F.3d 113 (3d Cir. 2015), *Nuveen Mut. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283 (3d Cir. 2012), *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258 (3d Cir. 2011), and *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000) still good law, but the application of *Shady Grove*, in its entirety, warrants upholding the district court's dismissal on separate grounds pursuant to the Rules Enabling Act, as set forth by Justice Stevens' concurring opinion in *Shady Grove*.  Applying the minimum federal pleading requirements in Delaware medical negligence actions, *i.e.*, displacing or preempting the DMMA,

6

operates to abridge, enlarge, and/or modify Delaware's state-created rights and remedies set forth by statute, which is prohibited by the Rules Enabling Act. Because the DMMA in general, and Delaware's AOM requirement specifically, are so intertwined with substantive rights and remedies, they cannot be displaced and must be applied in federal diversity cases.

3.      Finally, Plaintiff has taken inconsistent positions with respect to the application of the DMMA by availing himself of the ninety-day tolling of the applicable statute of limitations provided in 18 *Del. C.* § 6856 while also claiming that 18 *Del. C.* § 6853 should not apply in federal diversity cases. Plaintiff should be estopped from taking these inconsistent positions because the DMMA, as a whole, governs medical negligence actions under Delaware law. To the extent this Court disagrees with Encompass's analysis of *Shady Grove* and the Rules Enabling Act with respect to the DMMA, Plaintiff's case should be remanded with instructions to dismiss on statute of limitations grounds.

## ARGUMENT

### I. The District Court Correctly Determined That a Federal Court Sitting in Diversity Is Bound to Apply Delaware's Affidavit of Merit Statute, 18 *Del. C.* § 6853, as State Substantive Law

#### A. This Court's Framework for Resolving Choice-of-Law Issues in Diversity Cases Is Not Patently Inconsistent With *Shady Grove*

The issue presently before this Court—namely, whether a plaintiff must comply with Delaware's affidavit of merit ("AOM") requirements in a diversity case—is not novel. Since 2000, this Court has answered the same question, albeit with respect to New Jersey's and Pennsylvania's AOM requirements, on four separate occasions.[1] *Schmigel*, 800 F.3d at 115; *Nuveen*, 692 F.3d at 288; *Liggon-Redding*, 659 F.3d at 259; *Chamberlain*, 210 F.3d at 157. On each occasion, the New Jersey and Pennsylvania AOM Statutes were determined to be substantive law that must be applied by federal courts. *Schmigel*, 659 F.3d at 115; *Nuveen*, 692 F.3d at 304; *Liggon-Redding*, 659 F.3d at 264-65; *Chamberlain*, 210 F.3d at 157.

Under the *Erie* doctrine, "[a] federal court sitting in diversity must apply state substantive law and federal procedural law." *Chamberlain*, 210 F.3d at 158 (citing

---

[1] New Jersey's AOM statute is codified at N.J. Stat. Ann. §§ 2A:53A-26 *et seq.* (the "New Jersey AOM Statute"). In Pennsylvania, on the other hand, requirements for professional malpractice actions, which include the filing of a "certificate" of merit, are set forth in Pa. R. Civ. R. 1042.3 (the "Pennsylvania AOM Statute"). Although their terminology and sources of authority differ, the purposes of the New Jersey AOM Statute and the Pennsylvania AOM Statute are the same. Accordingly, to avoid confusion, this Brief will refer to both as AOM Statutes.

*Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "This substantive/procedural dichotomy of the *Erie* rule must be applied with the objective that in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court [will] be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Id.* at 158-59 (quoting *Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945) (internal quotation marks omitted)). The outcome-determinative focus is intended to serve *Erie's* twin aims: (1) discouraging forum shopping and (2) avoiding inequitable administration of the law. *Id.*

This Court employs a three-part framework to decide whether a federal court sitting in diversity must apply a state law or rule. *Schmigel*, 800 F.3d 113, 119. First, the Court determines if there is a "direct collision" between a federal rule and the state law or rule it is being asked to apply. *Id.* If there is a direct collision and the federal rule is constitutional and within the scope of the Rules Enabling Act, the analysis ends, and the federal rule applies. *Id.* Second, if there is no "direct collision," the Court examines whether the state law is outcome-determinative and whether failing to apply it would frustrate the twin aims of *Erie*. *Id.* Lastly, the existence of countervailing federal interests will be considered. *Id.*

As more thoroughly discussed, *infra*, applying this framework to 18 *Del. C.* § 6853 (generally, the "Delaware AOM Statute") illustrates that it is substantive state

law under *Erie* and, therefore, must be applied by a federal court sitting in diversity as the district court correctly determined.

On appeal, Plaintiff urges this Court to abandon its long-standing framework, and its attendant precedent, because it is "patently inconsistent" with *Shady Grove*. *See Chester ex rel. N.L.R.B. v. Grane Healthcare Co.*, 666 F.3d 87, 94 (3d Cir. 2011) ("[A] panel of our Court may decline to follow a prior decision of our Court without the necessity of an en banc decision when the prior decision conflicts with a Supreme Court decision."); *Planned Parenthood of S.E. Pa. v. Casey*, 947 F.2d 682, 698 (3d Cir. 1991) ("[A] change [by the Supreme Court] in the legal test or standard governing a particular area is a change binding on lower courts that makes results reached under a repudiated legal standard no longer binding.") (alteration in original), *aff'd in part, rev'd in part*, 505 U.S. 833 (1992). Such a drastic measure is unnecessary. *Shady Grove*—which neither addressed a state's AOM requirement nor any of the federal rules relevant here—did not significantly alter the framework, at least as it relates to step one, for determining whether a state law or rule is substantive or procedural in a diversity action. As a result, *Schmigel*, *Nuveen*, *Liggon-Redding*, and *Chamberlain* are not patently inconsistent with *Shady Grove* and overturning those decisions is unwarranted. Accordingly, this Court should analyze the issue currently before it just as it has for the last twenty-three years.

In *Shady Grove*, the Supreme Court addressed a conflict between a New York law that precludes class actions that seek penalties or statutory minimums and Federal Rule of Civil Procedure ("F.R.C.P.") 23, which governs class actions in federal court generally. 559 U.S. at 395-406. In a five-four decision, a majority of the Supreme Court agreed that F.R.C.P. 23 directly conflicted with the New York law precluding class actions seeking penalties or statutory minimums (step one).

As will be discussed more thoroughly, *infra*, the Supreme Court split on when F.R.C.P. 23 preempts a conflicting state class action statute (step two). Justice Scalia, writing for a plurality, concluded that F.R.C.P. 23 preempts *all* state class action statutes, regardless of the "substantive nature" or "substantive purpose" of the state law. *Id.* at 409. In his view, a federal rule is valid under the Rules Enabling Act if it "really regulates procedure." *Id.* at 410 (Scalia, J., plurality opinion). By contrast, in a concurring opinion, Justice Stevens adopted the view that when a federal rule and a state statute conflict, the federal rule "cannot govern a particular case in which the rule would displace a state law that is . . . so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423 (Stevens, J., concurring).

To be sure, *Shady Grove* has caused confusion among some federal courts seeking to interpret and apply its holding. *See, e.g.*, *Curry v. Mrs. Fields Gifts, Inc.*, 2023 WL 6318108, at *2 (D. Utah Sept. 28, 2023) (noting the different approaches

to step one of the analysis); *Fejzulai v. Sam's West, Inc.*, 205 F.Supp.3d 723, 726 (D.S.C. 2016) ("The decision in *Shady Grove* was issued by a severely fragmented court, which has presented rather confusing questions of interpretation for federal courts seeking to enforce the *Shady Grove* ruling.").  However, this confusion stems primarily from the fractured nature of the Court's decision as it relates to step two of the framework.  Step one of the framework, on the other hand, is the same as it has been since *Hanna v. Plumer*, 380 U.S. 460 (1965).  Consequently, this Court's precedent is consistent with *Shady Grove* and need not be overturned.  *See CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1141-43 (9th Cir. 2022) (finding that the majority opinion in *Shady Grove* "broke little new ground" for assessing conflicts between federal rules and state laws and was not sufficiently irreconcilable with the court's precedents to justify overturning those precedents).

In using the phrase "answers the question in dispute," the *Shady Grove* majority did not, as Plaintiff suggests, create a new step one of the framework utilized for choice-of-law analyses; it merely presented step one in a new way. Tellingly, the majority described the framework as "familiar" and cited *Burlington Northern R. Co. v. Woods*, 480 U.S. 1, 4–5 (1987) to identify what step one requires a court to do.  *Shady Grove*, 559 U.S. at 398.  *Burlington* dictates that courts should determine whether the "scope of the federal rule is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the

court, thereby leaving no room for the operation of that law." *Burlington*, 480 U.S. at 4-5 (citing *Hanna*, 380 U.S. at 470-71) (emphasis added). The phrase "direct collision" is precisely the same language this Court used in *Schmigel*, *Nuveen*, *Liggon-Redding*, and *Chamberlain* when it determined that New Jersey's and Pennsylvania's AOM Statutes were applicable in federal court. The majority's reference to the framework as "familiar," coupled with its reliance on *Burlington* and *Hanna*, illustrates that *Shady Grove* did not articulate, at least as it relates to step one, a new framework for this analysis.

Indeed, as the Ninth Circuit Court of Appeals recently remarked in *CoreCivic*, *Shady Grove* "did not discard the 'direct collision' test; it merely repackaged it." *CoreCivic*, 46 F.4th 1136, 1142. *See also Godin v. Schencks*, 629 F.3d 79, 87-88 (1st Cir. 2010) (noting that the concepts of "direct or indirect conflict" and "collision with state law" continue to play a role in the analysis while holding that Maine's anti-SLAPP statute was applicable in federal court). Because *Shady Grove* did not alter the framework for resolving conflicts between federal rules and state laws, there is no need for this Court to revisit and overturn its precedent. *Casey*, 947 F.2d at 698; *see also Chester ex rel. N.L.R.B.*, 666 F.3d at 89-90 (3d Cir. 2011) (concluding that recent Supreme Court decisions, which arose in different contexts and involved different statutory schemes, did not warrant abrogation of the Court's current approach to analyzing preliminary injunction motions).

This conclusion is bolstered by *Liggon-Redding* and *Schmigel*. As an initial matter, both cases were decided ***after*** *Shady Grove*, and it cannot be seriously contended that this Court was unaware of the *Shady Grove* decision at the time it issued those decisions. Had this Court determined that *Shady Grove* was inconsistent with its approach to choice-of-law analyses, it would have altered its framework years ago. Furthermore, while the *Liggon-Redding* and *Schmigel* courts did not expressly invoke *Shady Grove* in their analyses, the issue in both cases was resolved by first determining whether there was a conflict between the state law the court was asked to apply and the federal rules, precisely as *Shady Grove* dictates. *Compare Shady Grove*, 559 U.S. at 410 (describing step one of the framework as whether the federal and state rules can be "*reconciled*") (emphasis added) *with Liggon-Redding*, 659 F.3d at 263 (holding that the Pennsylvania AOM Statute was applicable in a diversity case because it "can *co-exist* with the Federal Rules") (emphasis added). Because the words "reconcile," as used in *Shady Grove*, and "coexist," as used in *Liggon-Redding*, are interchangeable, this Court employs the same step one as the Supreme Court. *Reconcile*, Oxford Languages (2023), *available at* Google.com (defining "reconcile" as "to coexist in harmony"). *See also Schmigel*, 800 F.3d at 121 (holding that the notice requirement of the Pennsylvania AOM Statute and the federal rules did not "*irreconcilably* conflict").

*Nuveen* provides additional support.  Having already determined that the New Jersey AOM Statute was applicable in federal court in *Chamberlain*, the plaintiff in *Nuveen* urged this Court to reconsider the continued validity of that conclusion in light of *Shady Grove*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *Id.* at 303.  In the plaintiff's view, the New Jersey AOM Statute collided with F.R.C.P. 8 and was, therefore, inapplicable in federal court.  *Id.*  Expressly addressing *Shady Grove*, the court in *Nuveen* held that the import of that decision is its clarification of the second caveat of the *Erie* rule— specifically, that the "direct collision" inquiry does not depend on the substantive or procedural nature or purpose of the affected state law but, rather, the substantive or procedural nature of the federal rule.  *Id.* at 302-03.  With that clarification in mind, the Court nonetheless determined that, because an AOM is not a pleading requirement, it does not collide with F.R.C.P. 8.

Plaintiff contends that the *Nuveen* court's analysis of *Shady Grove* is flawed because it only addressed the plurality's decision related to step two of the framework.  Plaintiff's Br. at p. 52.  But this contention is incorrect.  The only way a court can determine if a federal rule "directly collides" with or "answers the same question as" as a state law or rule, *i.e.*, perform step one of the analysis, is to consider the substantive or procedural nature of the federal rule, *i.e.*, what it regulates.  That is precisely what the *Nuveen* court did and because the New Jersey AOM Statute did

not in any way implicate the dictates of F.R.C.P. 8, there was no collision. Accordingly, this argument is meritless.

Plaintiff insists that this Court should join the "growing consensus" of its sister circuits and flatly hold, without due consideration of the factual circumstances, the nature of the claims, or the language of the relevant statutes, that all AOM statutes are inapplicable in federal court as a matter of law. This insistence is inapposite. Decisions from this Court's sister circuits are not binding; they are merely persuasive, *Humphreys v. DEA*, 105 F.3d 112, 117 (3d Cir. 1996), and none of the sister circuits' decisions cited by Plaintiff, *Martin v. Pierce Cnty.*, 34 F.4th 1125 (9th Cir. 2022); *Albright v. Christensen*, 24 F.4th 1039 (6th Cir. 2022); *Corley v. United States*, 11 F.4th 79 (2d Cir. 2021); *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021); *Young v. United States*, 942 F.3d 349 (7th Cir. 2019); *Gallivan v. United States*, 943 F.3d 291 (6th Cir. 2019), are sufficiently persuasive to justify this Court altering decades of its precedent.

*Pledger*, *Corley*, *Young*, and *Gallivan* were all actions brought by federal prisoners under the Federal Tort Claims Act ("FTCA"). *Pledger*, 5 F.4th at 515; *Corley*, 11 F.4th at 83; *Young*, 942 F.3d at 350; *Gallivan*, 943 F.3d at 293-94. As such, the factual and procedural circumstances of those cases are in stark contrast to those currently before this Court, which recently recognized the analytical distinction FTCA cases present. *See, e.g.*, *Wilson v. United States*, 79 F.4th 312, 318

(3d Cir. 2023) (explaining that a choice-of-law analysis in a diversity case "is an entirely distinct inquiry from determining which state laws allocate or inform tort liability and are thus incorporated as federal law in an FTCA case"); *see also Richards v. U.S.*, 369 U.S. 1, 7-8 (1962) (explaining that FTCA cases "are wholly distinguishable from [diversity] cases"). Although the *Wilson* Court cited with approval *Pledger*, *Gallivan*, and *Corley* and reached a similar decision, it did not employ the same reasoning. *Wilson*, 79 F.4th at 318-20. Such an outcome leads to one logical conclusion: This Court is aware of, and considered, the Second, Fourth, and Sixth Circuits' interpretations and applications of *Shady Grove* but did not find them sufficiently persuasive to justify abandoning its precedent. This case warrants a similar conclusion.

*Martin* is likewise unavailing. Therein, the Ninth Circuit held that a Washington statute requiring a plaintiff alleging medical malpractice to submit a pre-suit election or declination of arbitration was not applicable in federal court. *Martin*, 34 F.4th at 1126. Critically, though, *Martin* was not a diversity case. The plaintiff filed a 42 U.S.C. § 1983 claim over which the district court had original jurisdiction. *Id.* at 1128. Since *Martin* was not a diversity case, the underpinnings of the *Erie* doctrine were not implicated in the court's choice-of-law analysis like they are in this case. *See Wilson*, 79 F.4th at 319 n.5 ("Most fundamentally, diversity jurisdiction and 'related to' jurisdiction both require federal courts to adjudicate state

law claims that may be brought in state court; the considerations underpinning the *Erie* doctrine therefore apply with equal force in 'related to' cases."). Resultantly, *Martin* is not persuasive. Indeed, in a diversity action issued three months after *Martin*, the Ninth Circuit analyzed *Shady Grove* but nonetheless declined to revisit its prior precedent applying California's anti-SLAPP statute in federal court. *CoreCivic*, 46 F.4th at 1143.

Finally, although *Albright* is a diversity action like the case at bar, it is nonetheless unpersuasive for two reasons. First, *Albright* seemingly misconstrued the Fourth Circuit's holding in *Pledger* to support its holding that Michigan's AOM statute does not apply in a diversity action. The *Albright* Court noted: "The *Pledger* court addressed whether the federal courts must apply West Virginia's 'pre-suit requirements' in diversity cases." *Albright*, 24 F.4th at 1047. The court further stated: "Citing *Gallivan*, the *Pledger* court held that Rules 8(a), 9, 11, and 12 answer the question of 'whether a medical malpractice plaintiff must provide pre-suit expert support for his claim' and that West Virginia Code § 55-7B-6(b) thus does not apply in diversity cases." *Id.* at 1048. However, *Pledger* was not a diversity case; the plaintiff filed FTCA claims. *Pledger*, 5 F.4th at 515. *See also id.* at 532 (Quattlebaum, J., dissenting in part, concurring in part) ("After all, we are not looking to West Virginia law under diversity of citizenship jurisdiction, unlike *Erie* and its progeny. By contrast, we have jurisdiction based on 28 U.S.C. §

1346(b)(1)."). Second, *Albright* also relies on *Gallivan*, which, for the reasons stated *supra*, is inapplicable to choice-of-law analyses in diversity cases.

In sum, the Supreme Court's decision in *Shady Grove* did not significantly alter the framework employed by this Court, as it relates to step one, when determining whether a state law or rule is substantive or procedural in a diversity action. As such, departing from this Court's precedent is not warranted. Likewise, the Second, Fourth, Sixth, Seventh, and Ninth Circuits decisions in *Corley*, *Pledger*, *Gallivan*, *Albright*, *Young*, and *Martin* are not sufficiently persuasive to compel this Court to set aside its framework for evaluating conflicts between federal rules and state laws in diversity cases. As discussed more thoroughly *infra*, the Delaware AOM Statute is clearly substantive law that must be applied by a federal court sitting in diversity.

## B. Delaware's AOM Statute Is Substantive Law and, Therefore, Must Be Applied in Federal Court Pursuant to This Court's Existing Precedent

### 1. The Delaware AOM Statute neither collides nor conflicts with F.R.C.P. 8, 9, 11, or 12.

The Delaware AOM Statute requires a plaintiff alleging medical negligence to, in some instances, submit an affidavit signed by a qualified expert, setting forth the expert's opinion that there are reasonable grounds to believe that the applicable standard of care was breached by the defendant and that the breach was a cause of the injuries claimed in the complaint. 18 *Del. C.* § 6853(a), (c). For good cause

shown, a plaintiff can—just as Plaintiff did in this case—file a medical negligence complaint and move for a sixty-day extension to submit an AOM. *Id.* § 6853(a)(2). A failure to file an affidavit of merit in Delaware, when necessary, will result in a dismissal. *Enhali v. Patterson*, 197 A.3d 491, 2018 WL 5877272, at *1 (Del. Nov. 7, 2018) (TABLE). Like its New Jersey and Pennsylvania counterparts, the Delaware AOM Statute was enacted to reduce the filing of frivolous medical negligence claims. *Dishmon v. Fucci*, 32 A.3d 338, 3442 (Del. 2011). Also like its counterparts, the Delaware AOM Statute does not directly collide with, or otherwise answer the same question as, F.R.C.P. 8, 9, 11, or 12.

Plaintiff first contends that the Delaware AOM Statute conflicts with federal pleading standards because it "requires more" than what is set forth in F.R.C.P. 8 and 9. Plaintiff's Br. at p. 37. The *Liggon-Redding* court quickly disposed of this very argument, determining that the Pennsylvania AOM Statute did not collide or conflict with F.R.C.P. 8 or 9. *Liggon-Redding*, 659 F.3d at 262-63. F.R.C.P. 8, the court reasoned, merely requires a short plain statement of the claim showing that the plaintiff is entitled to relief. *Id.* at 262. F.R.C.P. 9, on the other hand, speaks to the specificity required in pleading certain types of claims, none of which are medical malpractice. "Taken together, these rules dictate the content of the pleadings and the degree of specificity that is required." *Id.* at 263 (internal quotation marks omitted). Because the Pennsylvania AOM Statute did not govern the contents of

pleadings or their level of specificity, it did not collide with F.R.C.P. 8 or 9. *Id.*; *see also Nuveen*, 692 F.3d at 303 (holding that the New Jersey AOM Statute did not collide with F.R.C.P. 8 because it had no effect on what is included in the pleadings or the specificity thereof); *Chamberlain*, 210 F.3d at 160 (same).

Like the Pennsylvania AOM Statute, the Delaware AOM Statute neither requires any factual averments nor identifies a degree of specificity required. Consider *Dishmon v. Fucci*, wherein the plaintiff's AOM stated, *in its entirety*: "[T]here are reasonable grounds to believe that medical negligence was committed by [licensed health-care providers] in the treatment and care of [the plaintiff] and that breach was the proximate cause of the injuries sustained and [the plaintiff's] death." 32 A.3d 338, 344 (Del. 2011). The Delaware Supreme Court determined that the AOM satisfied the Delaware AOM Statute because it contained the minimal language set forth in the statute. *Id.* In other words, the Delaware AOM Statute does not require a plaintiff to augment the complaint with a comprehensive, additional filing that particularizes the claims alleged. *See id.* (holding that a statement containing the statutory language is all that is required). Therefore, there is no direct collision between F.R.C.P. 8 and 9 and the Delaware AOM Statute.

Next, Plaintiff contends that the Delaware AOM Statute conflicts with F.R.C.P. 11. Plaintiff's Br. at p. 38. This, too, was addressed by the *Liggon-Redding* court, which found that F.R.C.P. 11 did not collide with the Pennsylvania AOM

Statute because each had different requirements and different outcomes for failing to comply. *Liggon-Redding*, 659 F.3d at 263. F.R.C.P. 11 requires an attorney to attest that the complaint is meritorious; the Pennsylvania AOM Statute requires an appropriate professional to attest that a licensed professional deviated from the standard of care. *Id.* A litigant's failure to comply with F.R.C.P. 11 can result in sanctions; by contrast, a litigant's failure to comply with the Pennsylvania AOM Statute will result in dismissal. *Id.* For these reasons, the court explained, F.R.C.P. 11 did not conflict with the Pennsylvania AOM Statute. *Id.*

The Delaware AOM Statute is not sufficiently different from the Pennsylvania AOM Statute, as it pertains to F.R.C.P. 11, to justify a different result. Like the Pennsylvania AOM Statute, the Delaware AOM Statute requires a signed affidavit from an expert witness stating that there are reasonable grounds to believe that there has been medical negligence committed by the defendant. 18 *Del. C.* § 6853(a). If the plaintiff fails to comply and does not meet any of the exceptions, the complaint will be dismissed. *Enhali*, 2018 WL 5877272, at *1. Since the Delaware and Pennsylvania AOM Statutes are virtually identical in the aspects relevant to F.R.C.P. 11, under *Liggon-Redding*, there is no conflict or collision.

Plaintiff also argues that, because the Delaware AOM Statute "demands that the plaintiff provide evidentiary support for medical negligence claims 'just to get through the courthouse doors,'" it conflicts with F.R.C.P. 12. Plaintiff's Br. at p. 42.

In *Schmigel*, the Court determined that the Pennsylvania AOM Statute did not conflict with F.R.C.P. 12 because an AOM has no effect on what is included in the pleadings, the sufficiency of which is tested by F.R.C.P. 12. *Schmigel*, 800 F.3d at 122. Instead, the contents of the AOM form the basis for a motion for summary judgment. *Id.* Again, because of its similarity to the Pennsylvania AOM Statute, the Delaware AOM Statute does not conflict with F.R.C.P. 12. *See Godin*, 629 F.3d at 91 (finding that a provision in Maine's anti-SLAPP statute that allows a special motion to dismiss was not preempted by F.R.C.P. 12 or 56 because there was no indication that those rules were intended to occupy the field as it relates to pretrial procedures aimed at weeding out meritless claims).

To distinguish the New Jersey and Pennsylvania AOM Statutes from the Delaware AOM Statute, and thus compel a different conclusion from those reached in *Schmigel*, *Liggon-Redding*, *Nuveen*, and *Chamberlain*, Plaintiff maintains that the Delaware AOM Statute creates a mandatory pleading requirement. In support, he focuses on the "temporal separation" between the filing of the complaint and the AOM and the required contents of the AOM. Plaintiff's arguments, however, misinterpret the Delaware AOM Statute and fail to consider analogous aspects of the New Jersey and Pennsylvania AOM Statutes.

In Plaintiff's view, because the Delaware AOM Statute states that a medical negligence complaint will not be docketed without an AOM, the AOM is a pleading

requirement. However, this interpretation is flawed in several respects. First—and most glaringly—Plaintiff's Complaint, which forms the basis for this appeal, was docketed *without an AOM* and without issue. 18 *Del. C.* § 6853(a)(2) (providing a sixty-day extension to submit an AOM after a medical negligence complaint is filed). This is analogous to the Pennsylvania AOM Statute, which requires a plaintiff to submit the AOM "with the complaint or within sixty days after the filing of the complaint . . . ." Pa. R. Civ. P. 1042.3(a); *see also* N.J. Stat. Ann. § 2A:53A-27 (requiring the AOM to be filed within sixty days after an answer to the complaint is filed). Moreover, in practice, Delaware courts routinely grant plaintiffs additional extensions to submit AOMs to ensure that matters are decided on the merits. *See, e.g.*, *Greenwald v. Caballero-Gallagher*, 2014 WL 7008959, at *4 (Del. Super. Ct. Nov. 25, 2014) (granting the plaintiff sixty days to submit an AOM seven months *after* the complaint was filed); *Palacio ex rel. Mitchell v. Premier Healthcare, Inc.*, 2015 WL 13697664, at *1 (Del. Super. Ct. Aug. 11, 2015) (granting the plaintiff three additional weeks to correct his AOM). Additionally, an AOM is not required if the complaint alleges a rebuttable inference of medical negligence, which arises in three circumstances enumerated in § 6853(e). Thus, it is an incorrect statement of law that a medical negligence complaint in Delaware cannot make it through the courthouse doors without an AOM.

Even if Plaintiff was correct and there is a complete lack of "temporal separation" between when the complaint and the AOM are filed, it would not matter. There are clear, practical differences between F.R.C.P. 8 and 9 and Delaware's AOM requirement. To begin, pleading requirements and other rules regulating civil procedure in Delaware are found in Delaware's Rules of Court, not in the statutory code. Moreover, an affidavit is not a pleading. F.R.C.P. 7 defines pleadings, and an AOM (or any affidavit for that matter) is not included. Nor is it included in Delaware Superior Court Rule of Civil Procedure 7. Moreover, the complaint and the AOM serve entirely different purposes. The complaint sets forth the claim; the AOM merely establishes that the claim is not frivolous. Notably, the AOM is neither discoverable nor admissible in the action, 18 *Del. C.* § 6853(d), which supports the conclusion that its sole purpose is weeding out frivolous claims, not stating claims.

Plaintiff also misrepresents what the Delaware AOM Statute requires as it relates to the contents of the AOM. He interprets the statute to mean that the AOM must contain a statement of the factual basis for the claim. Plaintiff's Br. at p. 49. This is simply untrue. The Delaware Supreme Court has held that an AOM need only contain the "functional equivalent of the statutory language." *See Dishmon*, 32 A.3d at 342, 344 (noting that the requirements are "purposefully minimal" and finding satisfactory an AOM that stated only the expert's conclusion that a breach of the standard of care occurred that resulted in the plaintiff's injuries). The cases

cited by Plaintiff do not support his position. In *Palacio ex rel. Mitchell*, the AOM was rejected because it did not state in "*simple*, clear language" that the expert believed that the negligence was the cause of the plaintiff's injuries. 2015 WL 13697664, at *1 (emphasis added). The court's decision in *Palacio ex rel. Mitchell* does not in any way suggest that the AOM must contain a statement of the factual basis for the plaintiff's claim. Nor does *Beckett v. Beebe Med. Ctr., Inc.*, 897 A.2d 753, 757 (Del. 2006). The portion of *Beckett* on which Plaintiff relies merely recites the language of the Delaware AOM Statute, which, as already established, does not require the AOM to contain facts. *Id.*

Finally, Plaintiff's focus on the alleged differences between each State's AOM statute and the implications arising therefrom is misguided. Such a focus creates an artificial distinction between the statutes that is inconsequential for their stated purpose: weeding out non-meritorious claims. Indeed, the focus should not be when the AOM must be filed or what it must contain; the focus should be the outcome mandated for a litigant's failure to comply. In all three statutes, a litigant's failure to comply when necessary will result in a dismissal. It is an illogical enterprise to deem the Delaware AOM Statute inapplicable in federal court when its substantive requirements, aims, and penalties are virtually identical to its New Jersey and Pennsylvania counterparts.

2. *The Delaware AOM Statute is outcome-determinative and failing to apply it would frustrate Erie's twin aims.*

Failing to apply the Delaware AOM Statute would be outcome-determinative and frustrate the twin aims of the *Erie* rule: (1) discouraging forum shopping and (2) avoiding inequitable administration of the law. In Delaware state court, a plaintiff's failure to submit an AOM, when required, will result in a dismissal of his action. *Enhali*, 2018 WL 5877272, at *1. Thus, failing to apply the Delaware AOM Statute in this case "would produce a different outcome than that mandated in the state proceeding." *Liggon-Redding*, 659 F.3d at 264.

Additionally, failing to apply the Delaware AOM Statute would encourage forum shopping. Given Delaware's proximity to New Jersey, Pennsylvania, and Maryland, it is not uncommon for residents of those states to seek out and receive medical treatment in Delaware. If the Delaware AOM Statute does not apply in federal court, out-of-state plaintiffs will be motivated to file meritless medical negligence claims in the District Court for the District of Delaware.

The failure to apply the Delaware AOM Statute would also result in an inequitable administration of the law because defendants would be forced to defend frivolous medical negligence lawsuits. Moreover, a Delaware resident would have to comply with the Delaware AOM Statute in state court while an out-of-state resident could avoid the requirement altogether simply by invoking the federal court's diversity jurisdiction. *Id.* at 264; *Chamberlain*, 210 F.3d at 161. Finally,

there is no countervailing federal interest that would prevent the application of the Delaware AOM Statute in federal court.

For all the foregoing reasons, this Court should affirm the district court's dismissal of Plaintiff's Complaint for failing to submit an AOM.

> ### 3. *The DMMA is so intertwined with Delaware's state rights and remedies that it cannot be preempted under the Rules Enabling Act.*

To the extent the Court determines that F.R.C.P 8, 9, 11, or 12 (or any other rules for that matter) are sufficiently broad that they conflict with the requirements of the DMMA, and, more particularly, the Delaware AOM Statute, the Court must next decide whether application of the federal rule(s) represents a valid exercise of the rule-making authority bestowed by the Rules Enabling Act (the "REA"). The REA instructs that the federal rules cannot abridge, enlarge, or modify a state-created right or remedy. *Shady Grove*, 559 U.S. at 418; 28 U.S.C. § 2702(b).

As discussed, *supra*, the *Shady Grove* Court fractured with respect to the second prong of the choice-of-law analysis—whether a federal rule preempts a conflicting state statute or rule. When no view of the Supreme Court is joined by a majority of justices, the Court's holding is determined by those justices who concurred "on the narrowest grounds." *Jackson v. Danberg*, 594 F.3d 210, 220 (3d Cir. 2010) (quoting *Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position

28

taken by those Members who concurred in the judgments on the narrowest grounds[.]")).

Justice Stevens' REA analysis required an examination of the state's substantive rights and remedies, which was consistent with the approach of the four-member dissent. *In re Wellbutrin XL Antitrust Litig.*, 756 F.Supp.2d 670, 675 (E.D. Pa. 2010). Accordingly, Justice Stevens' concurring opinion is widely recognized as forming the "narrowest ground" on the issue and, therefore, controlling for lower courts. *Godin v. Schencks*, 629 F.3d 79, 87 (1st Cir. 2010); *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 983 (10th Cir. 2010); *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011); *McKinney v. Bayer Corp.*, 744 F.Supp.2d 733, 746-47 (N.D. Ohio Sept. 30, 2010); *Bearden v. Honeywell Int'l, Inc.*, 2010 WL 3239285, at *10 (M.D. Tenn. Aug. 16, 2010); *In re Whirlpool Corp. Front–Loading Washer Prods. Liab. Litig.*, 2010 WL 2756947, at *1-3 (N.D. Ohio July 12, 2010); *In re Wellbutrin XL Antitrust Litig.*, 756 F.Supp.2d 670, 675 (E.D. Pa. 2010); *Davis v. Ace Hardware Corp.*, 2014 WL 688132, at *8 (D. Del. Feb. 21, 2014), *report and recommendation adopted*, 2014 WL 1457852 (D. Del. Apr. 11, 2014); *Jones v. Corr. Med. Servs., Inc.*, 845 F.Supp.2d 824, 850 (W.D. Mich. 2012); *Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *12 (E.D.N.Y. Mar. 5, 2012); *see also Lisk v. Lumber One Wood Preserving, LLC*, 2014 WL 66512, at *5 n.5 (N.D. Ala. Jan. 8, 2014) (utilizing Justice Stevens' framework).

Justice Stevens agreed with the four-member dissent that "there are some state procedural rules that federal courts must apply in diversity cases because they function as a part of the State's definition of substantive rights and remedies." *Shady Grove*, 559 U.S. at 416-17. Specifically, Justice Stevens held that "[a] federal rule . . . cannot govern a particular case in which the rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id*. at 423.

The Delaware AOM requirement contained in the DMMA falls squarely in that category: It is so intertwined with Delaware's state rights and remedies that it functions to define the scope of a state-created right and cannot be preempted, thereby invalidating F.R.C.P. 8, 9, 11, and 12 in the instant matter.

In *Shady Grove*, Justice Stevens analyzed the validity of F.R.C.P. 23 governing class actions and whether it preempted, or displaced, N.Y. Civ. Prac. Law § 901(b), which precludes class actions seeking penalties or statutory minimum damages, pursuant to the REA. In concluding that F.R.C.P. 23 displaced the New York statute, Justice Stevens concluded the statute was not so intertwined with New York's substantive rights and remedies because the rule was (a) in New York's procedural code, (b) it applied to class actions brought under any source of law (not just New York law), and (c) the legislative history was ambiguous. None of those factors are present here.

The DMMA, codified at 18 *Del. C.* §§ 6801 *et seq.*, was enacted in 1976 to "address concerns about the law that existed at the time and the rising costs of malpractice liability insurance." *Dambro v. Meyers*, 974 A.2d 121, 130 (Del. 2009). The DMMA is a forty-two part substantive act that addresses, among other issues: under what circumstances a healthcare provider can be sued, expert testimony necessary to support allegations of malpractice, collateral source and punitive damage standard applicable to medical negligence actions, etc. The DMMA creates instances of a rebuttable inference of medical negligence. 18 *Del. C.* § 6853(e). The DMMA further specifies the limitations period for medical negligence claims, offering a ninety-day tolling period for same. 18 *Del. C.* § 6856(4).

Furthermore, the DMMA defines what constitutes "medical negligence" in Delaware:

> [A]ny tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health-care provider to a patient. The standard of skill and care required of every health-care provider in rendering professional services or health care to a patient shall be that degree of skill and care ordinarily employed in the same or similar field of medicine as defendant, and the use of reasonable care and diligence.

18 *Del. C.* § 6801(7). "Health-care provider" and "Patient" are also defined in the DMMA. *Id.* §§ 6801(4)-(5), (9). Thus, if the plaintiff and the defendant do not fall within the statutorily defined relationship, the plaintiff has no claim. *See also Anderson v. Russell*, 2012 WL 1415911, at *5 (Del. Super. Ct. Apr. 18, 2012) ("As

the statutory definitions reveal, the existence of a doctor-patient relationship is a necessary predicate to a medical negligence action."). Thus, the DMMA creates state-created rights and remedies available in medical negligence actions. As aptly phrased by the Delaware Superior Court, medical negligence claims under Delaware law are "creatures of statute." *Anderson*, 2012 WL 1415911, at *5. *See also Saddler v. Nanticoke Memorial Hosp.*, 2012 WL 6846550, at *5 (Del. Super. Ct. Dec. 24, 2012) (noting that the DMMA imposes duties in abrogation of the common law).

Plaintiff offers little, if any, substantive analysis of the REA and its application to the circumstances at bar. Likely, because he cannot. To argue that the Delaware AOM requirement included in the DMMA is not so substantively intertwined with state-created rights and remedies would be disingenuous. Rather than offer a substantive analysis of the DMMA for purposes of applying the REA in the present case, Plaintiff argues in conclusory fashion that the bar for invalidating a federal rule under the REA is a high one and such challenges have been rejected by the U.S. Supreme Court. In doing so, Plaintiff cites to *Chamberlain* for the proposition that this Court previously rejected a REA argument set forth in a similarly-styled decision addressing the New Jersey AOM Statute. However, this is not true. A close reading of *Chamberlain* reveals this Court's statement that, "[t]here is, of course, no contention that Federal Rules 8 and 9 are beyond the scope of the Rules Enabling Act or inconsistent with the Constitution," was a reference to arguments advanced

(or in that case, not advanced) by the plaintiff in *Chamberlain*, and not an actual holding of the Court. 210 F.3d at 160. Nonetheless, a review of the substance of the DMMA illustrates the Delaware AOM Statute's inherent substantive nature, which cannot be ignored.

Because the DMMA defines the rights and remedies available in medical negligence actions, the Delaware AOM Statute should be deemed so intertwined with Delaware substantive law that to displace it by the Federal Rules of Civil Procedure would be a violation of the REA. The Delaware AOM Statute is precisely the type of statute that Justice Stevens had in mind when he analyzed the REA in *Shady Grove*. Applying only the minimal pleading standards of F.R.C.P. 8, 9, 11, and 12 and preempting the Delaware AOM Statute would operate to abridge, enlarge, and modify the substantive rights of litigants in medical negligence cases brought under Delaware law. The result would be a deluge of "out-of-state" citizens, à la dual resident citizens like Plaintiff, taking advantage of the minimal pleading requirements in federal court rather than being held to the higher, substantive standards purposefully codified and imposed by the Delaware legislature. *See Shady Grove*, 559 U.S. at 451 (Ginsburg, J., dissenting) (discussing the importance of the federalism principles undergirding the *Erie* doctrine). Delaware is unique in that many, if not the overwhelming majority, of its major healthcare institutions sit only five to fifteen miles from neighboring states, including Pennsylvania, New Jersey,

and Maryland. Preempting the DMMA and the Delaware AOM Statute would open the district court's doors to multitudes of plaintiffs whose claims would otherwise be precluded in Delaware courts.

Therefore, to the extent this Court determines that the Delaware AOM Statute conflicts or collides with, or otherwise answers the same question as, F.R.C.P. 8, 9, 11, or 12, the Delaware AOM Statute must be applied nonetheless because failing to do so would violate the REA.

## II. Plaintiff's Claims Are Time Barred

In the event this Court reverses the district court's Order and determines that the Delaware AOM Statute is inapplicable in federal court, it should remand the matter with instructions to dismiss pursuant to the doctrines of judicial and quasi-estoppel.

"Judicial estoppel is a discretionary doctrine that prevents a party from prevailing in one phase of the case on an argument and then relying on a contradictory argument to prevail in another phase of the case." *Thompson v. Real Estate Mortg. Network, Inc.*, 822 Fed.Appx. 136, 137 (3d Cir. 2020) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted)). Judicial estoppel does not preclude the assertion of all inconsistent positions; rather, its core tenet is preventing parties "from playing fast and loose with the courts." *Id.* An inconsistent position cannot be accepted when a party "gain[s] an advantage by

litigation on one theory, and then seeks an inconsistent advantage by pursuing and [sic] incompatible theory." *Id.* The court should also consider whether the party asserting the inconsistent position would gain an unfair advantage over, or impose a detriment to, the opposing party if not estopped. *Id.*

Similarly, the doctrine of quasi-estoppel:

> precludes a party from asserting, to another's disadvantage, a right inconsistent with a position it has previously taken. Quasi-estoppel applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. To constitute this sort of estoppel the act of the party against whom the estoppel is sought must have gained some advantage for himself or produced some disadvantage to another.

*Cahall v. Carey's Diesel, Inc.*, 2018 WL 2370869, at *2 (D. Del. May 24, 2018).

According to the Complaint in this matter, Plaintiff's cause of action against Encompass accrued—at the latest—on September 7, 2020—the date he was discharged from Encompass' care. Generally, this type of action is subject to a two-year statute of limitations under Delaware law. 10 *Del. C.* § 8119 (causes of action for personal injuries generally); 18 *Del. C.* § 6856 (causes of action asserting medical negligence claims). Thus, the statute of limitations on Plaintiff's claims against Encompass was set to expire on September 7, 2022. Recognizing this, on August 11, 2022, Plaintiff sent a Notice of Intent to Encompass, invoking 18 *Del. C.* § 6856(4) and the ninety-day tolling period it provides. Encompass received

Plaintiff's Notice of Intent and, based on that letter and the nature of his claims, understood that he was pursuing the action pursuant to the DMMA.

Plaintiff filed his Complaint on November 18, 2022—outside the two-year statute of limitations but within the ninety-day tolling period he previously invoked. On the same day, he moved for a sixty-day extension to provide an AOM pursuant to the Delaware AOM Statute. The District Court granted that request and, on January 17, 2023, Plaintiff submitted what he purported to be an AOM. Encompass filed a motion for *in camera* review of the AOM to determine if it complied with the Delaware AOM Statute. In response thereto, on January 29, 2023, Plaintiff asserted—a for the first time—that the Delaware AOM Statute was inapplicable in federal court. Several of the cases he cited in support of this newly-asserted position, which he also relies upon on appeal, were issued well before the statute of limitations on his claims expired. To understand why this conduct justifies the dismissal of Plaintiff's claim on statute of limitations grounds, a brief recitation of recent amendments to the DMMA is necessary.

In 2003, Delaware's General Assembly amended the DMMA to include the AOM requirement. *Dambro*, 974 A.2d at 132-33; 18 *Del. C.* § 6853(a)(1). At the same time the Delaware AOM Statute was amended, 18 *Del. C.* § 6856 was amended to include a ninety-day tolling period of the applicable statute of limitations set forth in the same statute to provide plaintiffs additional time "to determine whether a

potential claim has merit."  H.B. 310, 142nd Gen. Assem., Reg. Sess. (Del. 2003) (Bill Synopsis).[2]

It is axiomatic that a court must interpret statutes "as a coherent regulatory scheme . . . and fit, if possible, all parts into a harmonious whole."  *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (citation omitted); *see also Dambro*, 974 A.2d at 129-30 ("Because a statute passed by the General Assembly must be considered as a whole and not in parts, each section should be read in light of all the others in the enactment.").  Thus, the Delaware AOM Statute must be interpreted with due consideration of § 6856(4) since both are parts of the DMMA.  In so doing, it is clear—particularly since both statutes were amended at the same time—that the ninety-day tolling period provided in § 6856(4) is meant to provide a plaintiff additional time to obtain the AOM required by the Delaware AOM Statute.

With the foregoing in mind, Plaintiff's inconsistent positions become apparent.  Faced with the impending expiration of the two-year statute of limitations on his claims, Plaintiff invoked the relief provided for by § 6856(4) so he could have additional time—ostensibly to obtain an AOM.  Indeed, he even went as far as to seek an extension of time to provide an AOM when he filed his Complaint and,

---

[2] The synopsis for H.B. 310 is available at
https://www.legis.delaware.gov/BillDetail?LegislationId=14411.

ultimately, submitted what he purported to be an AOM. However, once Encompass challenged the sufficiency of the AOM—after five months of conduct which indicated his intent to comply with the Delaware AOM Statute—Plaintiff changed his position and claimed that the Delaware AOM Statute was inapplicable in federal court. Critically, his new position was not based on intervening authority. *Shady Grove* (2010), *Gallivan* (2019), and *Pledger* (2021), etc. were all issued well before Plaintiff submitted his Notice of Intent to Encompass in August 2022.[3]

Plaintiff should not gain the advantage of the ninety-day tolling period provided in 18 *Del. C.* § 6856(4) while at the same time escaping the requirement to submit an AOM. The Delaware AOM Statute and § 6856(4) were amended at the same time because the Delaware General Assembly understood that obtaining an AOM could pose a difficulty to litigants that may foreclose their ability to pursue otherwise meritorious claims. *See* H.B. 310, 142nd Gen. Assem., Reg. Sess. (Del. 2003) (Bill Synopsis). As such, the ninety-day tolling period is available only to litigants who submit an AOM. Since Plaintiff contends that he does not need to submit an AOM in federal court, he never needed the extra time to file his Complaint. He could have initiated his action against Encompass at any point after his cause of action accrued. Instead, Plaintiff chose to play "fast and loose," which judicial

---

[3] Strangely, in April 2023, Plaintiff filed an action against certain medical providers that refused to provide him the AOM he now claims he never needed.

estoppel is meant to prevent. Equity dictates that his claims be governed by a two-year statute of limitations, without the benefit of any tolling periods. Resultantly, Plaintiff's Complaint had to be filed on or before September 7, 2022. Plaintiff filed the Complaint on November 18, 2022—seventy-two days after the statute of limitations expired.

Accordingly, should this Court agree with Plaintiff and determine that the Delaware AOM Statute is inapplicable in federal court, it should also rule that the tolling period provided in § 6856(4) is similarly inapplicable and that Plaintiff's claims are time barred. *Davis v. Gauby*, 408 Fed.Appx. 524, 526 (3d Cir. 2010) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) ("Although the statute of limitations is an affirmative defense, *sua sponte* dismissal is appropriate when the defense is obvious from the face of the complaint and no further factual record is required to be developed.")).

## CONCLUSION

The Court should affirm the district court's dismissal of Plaintiff's Complaint. In the alternative and in the event the Court determines that the Delaware AOM Statute is inapplicable in federal court, it should remand the matter with instructions to dismiss because Plaintiff's claims against Encompass are time barred.

Respectfully submitted,

*s/ Jessica L. Reno*
Colleen D. Shields
Jessica L. Reno
Paul S. Seward
ECKERT SEAMANS CHERIN & MELLOTT, LLC
222 Delaware Avenue, Suite 700
Wilmington, DE 19801
(302) 574-7400
cshields@eckertseamans.com
jreno@eckertseamans.com
pseward@eckertseamans.com
*Counsel for Appellee Encompass Health
Rehabilitation Hospital of Middletown, LLC*

Dated: December 4, 2023

## CERTIFICATE OF BAR MEMBERSHIP

I hereby certify that I am a member of the Bar of this Court.


Dated: December 4, 2023          _s/ Jessica L. Reno_
                                 Jessica L. Reno

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2023, I electronically filed the foregoing document and accompanying materials with the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


Dated: <u>December 4, 2023</u>        <u>*s/ Jessica L. Reno*</u>

                                      Jessica L. Reno

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      The foregoing brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) because the brief contains 9,067 words.

2.      The brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

3.      In accordance with Third Circuit Local Appellate Rule 31.1(c), the text of Appellee's Brief, as electronically filed on December 4, 2023, is identical to the text of the Brief to be submitted in paper copy.

4.      In accordance with Third Circuit Local Appellate Rule 31.1(c), Appellee's Brief, as electronically filed on December 4, 2023, was scanned with a virus detection program VirusTotal, and no virus was detected.


Dated: December 4, 2023          *s/ Jessica L. Reno*
                                 Jessica L. Reno